■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ABRAHAM RIVERA, Appellant.—Judgment of the Supreme
Court, Bronx County (Harold Silberman, J.), convicting defen-
dant of robbery in the second degree (Penal Law § 160.10 [1]),
and sentencing him to an indeterminate term of imprison-
ment of from 1½ to 4½ years, reversed, on the law, and the
indictment dismissed. The matter is remitted to the trial court
for the purpose of entering an order in favor of the accused
pursuant to CPL 160.50, not less than 30 days after service of
a copy of this Court's order upon the respondent, with leave
during this 30 day period to respondent to move and seek any
further stay of the implementation of CPL 160.50 as in the
interest of justice is required.

In the early morning of December 3, 1988, sometime after
2:00 A.M., an altercation took place between Jeffrey Medici,
the complaining witness, and George Vasquez. The confronta-
tion was later joined by Vasquez's companion, defendant
Abraham Rivera. Medici and defendant were the only wit-
nesses to the incident to testify at trial. While the facts
recounted by each are in greater part identical, the signifi-
cance which each attaches to the events is markedly different.

As defendant Rivera relates it, he and his two companions,
George Vasquez and Santos Cruz, had just finished eating at a
restaurant and were driving around looking for a place to buy
sodas before purchasing gasoline for their trip back to New
Jersey. They located an open carry-out restaurant, the Baha-
mas Chicken Restaurant, on 149th Street and Morris Avenue
in the Bronx, and defendant went into the restaurant to buy
the sodas. While defendant was waiting on line inside the
restaurant, he turned to look out the window and saw Vas-
quez and Jeffrey Medici, whom he had never met, involved in
an altercation. Medici was facing towards the restaurant and
Vasquez had his back towards the store. It appeared to defen-
dant that they were exchanging punches, and he observed
Medici apparently trying to get his coat off. Defendant left the
restaurant to come to the aid of his acquaintance, and
punched Medici in the face, causing him to "back off" and run
across the street.

Defendant asked Vasquez what happened and was told
"that the guy was looking for problems." Vasquez picked up a
gold-colored chain and the coat which was lying on the ground
at the time defendant came out of the restaurant. Vasquez
handed the coat to defendant who threw it onto the back seat
of their car, parked right in front of the restaurant about four
feet from where defendant was standing. Vasquez took the

back seat and defendant sat in the front passenger seat, while Santos Cruz drove around looking for a filling station. Defendant tossed the chain, which Vasquez had thrown on the front seat, out of the window. Shortly thereafter, the men were apprehended by police as they pulled into a gas station. While sitting in the patrol car, defendant heard Vasquez say, "Junior, there's a gun in the car." A silver .22 caliber automatic handgun with a white handle, loaded with 13 rounds of ammunition, was recovered from underneath the rear seat on the passenger side. A black denim coat was found in the trunk of the car. Defendant stated that access to the trunk could be gained from the back seat by pulling the seat forward.

Jeffrey Medici testified that he was the victim of a robbery which occurred at 149th Street and Morris Avenue, Bronx County, in the vicinity of the Bahamas Chicken Restaurant. While walking along 149th Street, Medici observed a blue Oldsmobile with New Jersey license plates containing three occupants pass him five or six times, finally pulling up to the curb in front of the Bahamas Restaurant about 10 feet away from him. Medici wore a denim "G-man" coat and a gold-plated rope chain he bought for $10 on 42nd Street. He was grabbed from behind by the collar of his coat by George Vasquez who held a "nickel-plated .22" in his left hand at waist level and said, "Take off your coat." Medici was preparing to swing at Vasquez when he was struck in the face by defendant. Then, Medici alleges, "George Vasquez—I mean, he had throw me against the floor" and, "Took my coat and my chain. It had popped when he grabbed me." Vasquez picked up the chain and the coat and handed the coat to defendant, who threw it into the back of the car, parked about five feet away. Vasquez took the right rear seat and defendant sat in the front passenger seat. A third man, who never left the vehicle, sat in the driver's seat (Santos Cruz). Medici walked towards Third Avenue, at which point he noticed a police car stopped about 20 feet from where the robbery took place and notified the officers.

On cross-examination, Medici admitted that he had exchanged words and was in the middle of a fight with Vasquez when defendant struck him. He further acknowledged that the chain fell to the ground during the course of the scuffle. On re-direct examination, Medici stated that he first saw Rivera as he came out of the restaurant. "We were in front of the chicken place, me and George Vasquez," 10 or 12 feet from the entrance to the restaurant.

In the course of his testimony, Medici admitted committing

several robberies, remarkably similar in modus operandi to the one he describes as victim in this case. In one, jewelry, cash and a sheepskin coat were taken from a victim who was thrown to the floor and punched. In another, money and jewelry were taken from the victim, during the course of which Medici "grabbed him by the neck, and I threw him against the floor; and then, Marmolejos had took his jewelry and his money, and he punched him. And then, I punched him."

Even viewing the evidence, as the Court must, in a light most favorable to the prosecution *(People v Contes,* 60 NY2d 620) and taking the facts as Medici relates them, there is no evidence that defendant knew a robbery was in progress when he came to the assistance of Vasquez. Medici did not say that defendant saw the gun and, indeed, confirmed that Vasquez stood with his back towards Rivera as defendant approached from the direction of the restaurant. Medici conceded he was in the middle of a fight with Vasquez when defendant intervened. That defendant struck Medici under these circumstances is not sufficient to implicate him in the crime of robbery.

Similarly, merely throwing Medici's coat into the back seat of the car and discarding the chain left by Vasquez on the front passenger seat does not make defendant a participant in the crime of robbery. In response to the question, "when was the first time he [defendant] approached you?," Medici responded, "He approached me—after he [George Vasquez] grabbed me and took my coat, and then, he [defendant] had punched me right on the side of my jaw." This testimony is entirely consistent with defendant's statement, "The coat was on the floor already when I came out." Defendant's contention that the chain was also on the ground the first time he saw it is likewise supported by Medici's testimony on redirect examination.

"Q Do you know what caused the chain to fall to the ground?

"A When he pulled it, when he pulled my coat.

"Q Who pulled it?

"A George Vasquez.

"Q Was it the act of pulling it that broke the chain?

"A Yeah.

"Q Who picked it up from the ground?

"A He did, George Vasquez."

It is well established that the crime of robbery is not a strict liability offense and, thus, intent or a culpable mental state is required for its commission (Penal Law § 15.15 [2]; *People v Chessman,* 75 AD2d 187, *appeal dismissed* 54 NY2d 1016; *People v Lopez,* 58 AD2d 516). For intent to be shown in this matter, defendant must have intended to rob Medici. Even Medici concedes that defendant was in the restaurant when Vasquez commenced the robbery and that the only thing defendant did was punch him and put the coat Vasquez handed to him in the car. Criminal intent requires a purpose or objective to be "fixed in the mind" *(People v Tracey A.,* 97 Misc 2d 1053, 1056; *People v Molineux,* 168 NY 264). In the matter at bar, defendant's only objective was to assist a friend thought to be engaged in a fight.

That Vasquez was indeed committing robbery and not merely engaged in a fight is not relevant to defendant's intentions. Defendant's guilt is not established solely because, in hindsight, his behavior was helpful to the actual perpetrator *(People v La Belle,* 18 NY2d 405). It is a well-established rule of law that the intent to commit a crime must be present at the time the criminal act takes place *(People v Chessman, supra; People v Lopez, supra).* The use of force alone is not evidence of an intention to steal *(People v Morales,* 130 AD2d 366 [defendant who assaulted victim not shown to have intended robbery]; *People v De Jesus,* 123 AD2d 563). To be guilty of robbery, defendant's use of force must be shown to have been for the purpose of executing the robbery *(People v Chessman, supra).*

There is no support in the record for the People's contention that defendant had any knowledge of Vasquez's intentions, and Vasquez's intentions cannot be imputed to defendant *(People v Reyes,* 110 AD2d 663, *lv denied* 65 NY2d 699 [evidence linking the defendant to attempted robbery purely circumstantial and did not refute likelihood that he only participated in assault and did not share the specific intent of his cohort to rob]; *People v Sanders,* 38 AD2d 877 [evidence insufficient to prove robbery since no inference can be drawn from intentions or statements of one defendant against co-defendant]). We therefore conclude that the verdict is not supported by legally sufficient evidence. Concur—Milonas, J. P., Ellerin and Rubin, JJ.

Asch, J., dissents in a memorandum as follows: I would affirm the judgment of the Supreme Court convicting defendant of robbery in the second degree. The majority concludes that the verdict is not supported by legally sufficient evidence.

As their writing concedes, however, we must view the evidence in the light most favorable to the prosecution *(People v Contes,* 60 NY2d 620) and take the facts, as the complainant Medici related them. Applying this principle, we find the People proved the defendant's intent and use of force by a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" *(People v Bleakley,* 69 NY2d 490, 495).

Medici testified that he saw defendant seated in the front passenger seat of a blue Oldsmobile with Vasquez in the rear passenger seat. This car passed him "around five times" before stopping in front of the Bahamas Chicken Restaurant about five feet from where Mr. Medici was then standing. Mr. Medici testified that when Vasquez drew the gun and demanded his coat he also punched the complainant in the jaw. Mr. Medici did not (and could not) testify that defendant intended to join in the robbery before that point. However, Medici did testify that defendant punched him in the left jaw and cheek just as Vasquez had done. Further, while defendant was at the scene, Vasquez threw Medici to the ground and took his coat and a gold plated chain. Vasquez handed the coat to defendant who ran with it to the waiting vehicle throwing the coat into the back seat. In response to the question "At what point did Mr. Vasquez give the coat to Mr. Rivera?", Medici responded "When he took it." Vasquez ran to the car with the chain and both he and defendant drove away. When the police stopped the car they recovered from under the back seat the loaded gun used in the robbery and in the car trunk the coat stolen from Medici.

Certainly, even this short recapitulation of Medici's testimony clearly supports the jury's verdict that defendant took part in the robbery. As trier of the facts, the jury was in the best position to assess the credibility of testifying witnesses since it had the advantage of observing them. This Court should not usurp this "traditional and exclusive province of the jury" *(People v Parks,* 41 NY2d 36, 47). The evidence presented clearly established defendant's intent to take Medici's property, i.e., the coat, and the use of force to accomplish this.

In a recent case where the proof was even more equivocal than in this matter, we stated: "While there was some conflict in the testimony regarding whether defendant participated in the struggle to wrest the wallet from the complainant or whether defendant was standing 20 feet away, there was

sufficient evidence for a jury to find, beyond a reasonable doubt, that defendant was 'actually present' within the meaning of Penal Law § 160.10 (1). Defendant was in plain view of the victim of the robbery and was in a position to aid in the forcible taking of the property and the retention of such property immediately after the taking *(People v Dennis,* 146 AD2d 708, *affd* 75 NY2d 821; *People v Robinson,* 127 AD2d 860). Thus, defendant was a person actually present within the meaning of Penal Law § 160.10." *(People v Moses,* 162 AD2d 311, 312.)