[841 NE2d 289, 807 NYS2d 321]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TREVOR GREEN, Appellant.

Argued October 17, 2005; decided November 21, 2005

## POINTS OF COUNSEL

*Lynn W.L. Fahey,* New York City, and *Mae C. Quinn* for appellant. I. Appellant was deprived of his due process rights to a fair trial and to present a defense by the court's refusal to: (a) charge that his good-faith belief that he was reclaiming a compact disc player that had been stolen from him minutes earlier would negate the larcenous intent required for robbery; and (b) submit petit larceny, to which the claim-of-right defense unquestionably applied, to the jury as a lesser included offense of robbery. (*People v Reid,* 69 NY2d 469; *Mathews v United States,* 485 US 58; *Chambers v Mississippi,* 410 US 284; *People v Wilson,* 93 NY2d 222; *People v Zinke,* 76 NY2d 8; *People v Miller,* 87 NY2d 211; *People v Smith,* 79 NY2d 309; *People v Alfaro,* 260 AD2d 495; *People v Hubbert,* 212 AD2d 633; *People v Chesler,* 50 NY2d 203.) II. Appellant was denied his due process right to a fair trial when the court failed to respond meaningfully to jury questions by (a) refusing to provide a complete recharge on robbery that included the definitions of key terms at issue in the case; and (b) over defense objection, defining "aid" only in layman's terms and telling the jurors that it had "no special legal meaning." (*People v Lourido,* 70 NY2d 428; *People v Almodovar,* 62 NY2d 126; *People v Malloy,* 55 NY2d 296, 459 US 847; *United States v Velez,* 652 F2d 258; *People v Steinberg,* 79 NY2d 673; *People v Cruz,* 272 AD2d 922, 96 NY2d 857; *People v Craig,* 293 AD2d 351; *People v Redd,* 266 AD2d 12; *People v Miller,* 288 AD2d 698; *People v Williams,* 225 AD2d 447.)

*Richard A. Brown, District Attorney,* Kew Gardens (*Anastasia Spanakos-Orfan* and *John M. Castellano* of counsel), for respondent. I. The trial court properly declined to instruct the jury on the statutory good-faith claim-of-right defense and properly declined to submit the lesser included offense of petit larceny.

(*People v Reid,* 69 NY2d 469; *People v Smith,* 79 NY2d 309; *People v Olah,* 300 NY 96; *Levy v Levy,* 33 NY 97; *Mount v Mitchell,* 31 NY 356, 32 NY 702; *People v Hernandez,* 82 NY2d 309; *People ex rel. McCann v Kilbourn,* 68 NY 479; *People v Shannon,* 89 NY2d 1000; *People v Scunziano,* 140 AD2d 645; *People v Valente,* 129 AD2d 824.) II. The court's responses to the jury's requests for further instructions were proper. (*Johnson v Zerbst,* 304 US 458; *People v Richardson,* 88 NY2d 1049; *People v Ahmed,* 66 NY2d 307; *People v LaValle,* 3 NY3d 88; *People v Gruttola,* 43 NY2d 116; *People v Cohen,* 5 NY2d 282; *People v Gray,* 86 NY2d 10; *People v Padro,* 75 NY2d 820; *People v Laraby,* 92 NY2d 932; *People v Steinberg,* 79 NY2d 673.)

### OPINION OF THE COURT

Chief Judge KAYE.

In a prosecution for robbery of a specific chattel, is a defendant who in good faith believed that the property was his entitled to a "claim-of-right" jury instruction? Both because the Legislature has limited the availability of the statutory claim-of-right defense to prosecutions for larceny by trespass or embezzlement (*see* Penal Law § 155.15 [1]), and because public policy considerations militate against encouraging the use of forcible self-help to recover property, we conclude that he is not.

### Facts

On December 7, 2001, defendant and two acquaintances approached Christian Pabon as he was walking with his friends in Queens, New York. Defendant held out his hand and Pabon, believing that the stranger was attempting to greet him, returned the gesture by slapping him "five." Defendant told Pabon, however, that he did not want a greeting; he made clear that he wanted Pabon's compact disc player. Defendant snatched the player out of Pabon's hand, walked away and allegedly began listening to the "Busta Rhymes" CD in the disc player.

Pabon followed defendant, repeatedly asking for his disc player back, at which time one of defendant's acquaintances, co-defendant Quentin Jones,[1] approached Pabon and told him to "run [his] pockets"—meaning, to give Jones his money. Pabon told Jones he did not have any money and then turned to continue following defendant, whereupon Jones repeatedly punched Pabon from behind, causing a laceration on Pabon's ear.

---

1. Jones pleaded guilty and defendant proceeded to trial alone.

Shortly thereafter, Pabon alerted a passing police car and identified defendant and his acquaintances as having taken his disc player and punched him. The police arrested defendant at the scene and recovered the disc player. Defendant and Jones were charged with two counts of robbery in the second degree—aided by another person actually present, and causing physical injury—as well as criminal possession of stolen property in the fifth degree.

At trial, defendant testified that, shortly before taking the disc player from Pabon, he had borrowed a friend's portable Aiwa compact disc player, containing a "Busta Rhymes" CD, which was stolen from him by a group of six or seven members of the Latin Kings gang. Defendant recognized the individuals as Latin Kings because of their customary gang attire—yellow bandanas and yellow and black beads. Defendant also noticed that one of the assailants wore wire-rimmed glasses.

According to defendant, he first approached Pabon because Pabon was holding a disc player and resembled one of the individuals who had taken the disc player from him. Although Pabon was not wearing clothing associated with the Latin Kings, he was wearing wire-rimmed glasses and was holding an Aiwa disc player. Defendant further testified, however, that, after seeing Pabon on the stand, he did not in fact recognize him as one of the individuals who had stolen his disc player, but at the time of the incident he was fairly certain that Pabon was one of them and believed that the disc player was the one that had been taken from him.

The court instructed the jury on the prosecution's burden to prove beyond a reasonable doubt each element of robbery, including that the defendant possessed the requisite intent to commit the crime. Prior to that instruction, however, defendant had requested that the court additionally charge the jury on the claim-of-right defense codified in Penal Law § 155.15 (1). The court denied that request, based on its interpretation of *People v Reid* (69 NY2d 469 [1987]). The jury convicted defendant of both second-degree robbery counts as well as the possession charge. The Appellate Division affirmed, holding that "[c]ontrary to the defendant's contention, the trial court properly refused to charge the jury on the 'claim of right' defense since such a defense is only available in a larceny prosecution, not in a robbery prosecution" (*People v Green*, 11 AD3d 559, 559 [2004]). We now affirm.

## Discussion

Penal Law § 155.15 (1) provides that "[i]n any prosecution for larceny committed by trespassory taking or embezzlement, it is an affirmative defense that the property was appropriated under a claim of right made in good faith." In *People v Chesler* (50 NY2d 203, 209-210 [1980]), however, we held that section 155.15 was unconstitutional insofar as it made a good-faith claim of right an affirmative defense because to do so impermissibly shifted the burden onto the defendant to disprove the element of intent.

Our holding recognized that a good-faith claim of right negates larcenous intent—otherwise, a claim of right would not impermissibly shift the burden of proving an essential element of the crime and could remain an affirmative defense. Indeed, as we explained in *People v Zinke* (76 NY2d 8, 10 [1990]),

> "[l]arceny is committed when one wrongfully takes, obtains or withholds 'property from an owner thereof' with intent to deprive the owner of it, or appropriate it to oneself or another. 'Owner' is defined in Penal Law § 155.00 (5) as one 'who has a right to possession [of the property taken] superior to that of the taker, obtainer or withholder' " (citation omitted).

The current larceny statute provides simply that "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law § 155.05 [1]). The statute, however, cannot properly be read to require merely the intent to take property, rather than the intent to take property from a person with a superior right to possession.

Indeed, it is clear that when the Legislature amended the statute and eliminated the reference to the intent to take property from its owner, it meant no substantive change to larceny's intent element but only simplified the definition of larceny and eliminated the distinction among different types of theft (*see* Denzer and McQuillan, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 155.05, at 417 [1967 ed]; L

1942, ch 732, § 1).[2] Moreover, when there is a single mens rea requirement in a criminal statute, it is presumed to apply to every element of the offense. Thus, to commit larceny, a larcenous actor must act with the "intent" to take property "from an owner thereof" (Penal Law § 155.05 [1]; *see also* Penal Law § 15.15).

Defendant argues that because robbery is a larceny using force the Legislature intended the good-faith claim-of-right defense to apply to certain types of robbery. As we noted in *People v Reid* (69 NY2d 469, 475 [1987]), a tenable argument could be made that "one who acts under a claim of right lacks the intent to steal and should not be convicted of robbery" when such person seeks to retake his or her own specific chattel. In *Reid*, however, we chose not to resolve this issue, focusing instead on "whether a good-faith claim of right, which negates larcenous intent in certain thefts, also negates the intent to commit robbery by a defendant who uses force to recover cash allegedly owed him" (*id.* at 472 [citation omitted]).

We concluded in *Reid* that a claim-of-right defense was not available, reasoning that the defense was codified in the larceny article, but not in the robbery article. Moreover, the statute limits the availability of the defense only to larceny by trespass or embezzlement. Noting the significance of the Legislature's failure to authorize a general claim-of-right defense for extortion, which "entails the threat of actual or potential force or some form of coercion" (69 NY2d at 476), we inferred that the Legislature recognized that an accused should not be permitted to invoke the defense in crimes involving force. Indeed, we assumed "that if the Legislature intended to excuse forcible taking, it would have said so" (*id.*). We also explained that, on policy grounds, we were unwilling to expand the area of permissible self-help, finding a meaningful difference between larceny, in which the use of force is a nonissue, and robbery, in which the defendant obtains money allegedly owed to him by threatening or using force.

---

2. Even beyond our State's earliest codifications of larceny—which made clear that the mental culpability required was the intent to take property from its true owner (*see* Penal Code of 1888 § 528; Penal Law of 1909 § 1290)—at common law the mens rea element of theft included the intent to take property from another with a superior right to possession (*see* 3 Stephen, History of the Criminal Law of England, ch XXVIII, at 132 [1883] ["the definition of the offence (theft) includes an intention to deprive the owner of his property permanently"]).

*Reid* is distinguishable from the present case. There, the defendant simply could not have had a true claim of right to the fungible cash—the bills themselves—he took to satisfy an alleged debt. When the robbery is of a particular chattel, however, there can be a genuine belief in ownership of the specific property taken. Thus, a good-faith claim that the chattel belonged to the taker, would, if believed by the jury, negate the element of larcenous intent.[3]

Indeed, because the prosecution must prove beyond a reasonable doubt that the defendant intended to take property from someone with a superior right to possession, a good-faith but mistaken claim of right might defeat a robbery prosecution (*see* Model Penal Code and Commentaries § 223.1, Comment 4 [1980] [explaining that, to be guilty of a theft offense, "the actor must know that the property belongs to another." Accordingly, "(t)he claim-of-right defense . . . can thus be regarded as redundant with respect to these offenses since a proper analysis of their elements requires knowledge of the proprietary interest of the other party and hence would recognize an honest, though unreasonable, mistake as a defense."]). And, as here, a defendant is, of course, free to make that argument to the jury.

■ However, simply because a jury might be convinced by a claim-of-right *argument*, it does not follow that a claim-of-right *charge*, derived from a statutory defense limited to certain types of larceny, is also available to defendants in robbery prosecutions. Such an instruction by the court, over and above an instruction on the element of intent, unquestionably aids the defendant by underscoring one aspect of the proof, or lack of proof. The Legislature did not provide that additional assistance where the defendant employs physical force.[4]

Section 155.15 (1), by its terms, applies only to prosecutions for certain types of larceny. Indeed, the statutory claim-of-right defense in New York has been associated with larceny prosecutions since, at the latest, 1882, when the Penal Code provided

---

3. Even at early common law, a good-faith claim of right to the property taken could negate the element of intent to commit robbery (*see* 2 Wharton, Criminal Law of the United States § 1697, at 115 [5th ed 1861]). Wharton explained that "[i]f one, under a *bona fide* impression that the property is his own, obtain it by menaces, that is a trespass, but no robbery (*id.*).

4. ·The New York Legislature's limitation of the claim-of-right defense to certain types of larceny distinguishes our decision from cases such as *People v Tufunga* (21 Cal 4th 935, 987 P2d 168 [1999]). More analogous is *State v McMillen* (83 Haw 264, 925 P2d 1088 [1996]), where the Hawaii Supreme Court concluded that Hawaii's claim-of-right statute was not applicable to robbery.

that "[u]pon an indictment for larceny it is a sufficient defense that the property was appropriated openly and avowedly, under a claim of title preferred in good faith, even though such claim is untenable" (Penal Code of 1882 § 548).

Moreover, a claim-of-right charge in the robbery context encourages forcible self-help in pursuing property. When the Legislature wished to authorize self-help, it has done so explicitly, as in the justification defense (see Penal Law § 35.15). Thus, a specific jury instruction on the claim-of-right defense is not available for robbery, regardless of the nature of the property taken.

Addressing defendant's remaining contentions, "[w]here a court charges the next lesser included offense of the crime alleged in the indictment, but refuses to charge lesser degrees than that . . . the defendant's conviction of the crime alleged in the indictment forecloses a challenge to the court's refusal to charge the remote lesser included offenses" (*People v Boettcher*, 69 NY2d 174, 180 [1987]). Here, the jury convicted the defendant of second-degree robbery, even though the lesser included third-degree robbery charge was also available. Hence, defendant is foreclosed from challenging the court's refusal to charge the more remote lesser included offense of petit larceny, if indeed such a charge was available on the facts. Finally, we agree with the Appellate Division that defendant's contentions regarding the court's responses to jury notes are without merit.

Accordingly, the order of the Appellate Division should be affirmed.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed.