[914 NYS2d 87]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEBRA PAGAN, Appellant.

First Department, December 14, 2010

## APPEARANCES OF COUNSEL

*Steven Banks, The Legal Aid Society*, New York City (*Svetlana M. Kornfeind* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Sara M. Zausmer* and *Gina Mignola* of counsel), for respondent.

## OPINION OF THE COURT

Moskowitz, J.

On the night of February 17, 2008 at 9:30 P.M., defendant hailed a livery cab at 116th Street and Madison Avenue and asked the cabdriver to take her to 109th Street and Lexington Avenue. Defendant claimed to have only $4, said she knew the minimum fare was $6, but asked the cabdriver to "do her a favor and take her" anyway. The cabdriver agreed, because it was cold and raining, and defendant looked a little sick.

Although she had claimed to have only $4, upon arrival at defendant's destination, defendant gave the cabdriver a $1 bill and a $20 bill. The cabdriver returned the dollar to defendant, saying that he did not need it to make change, then gave her $16. However, defendant insisted that she was entitled to $17. When the cabdriver reminded her that he had already returned one dollar, defendant became angry. Screaming, defendant accused the cabdriver of confusing her and demanded that he return the $20 bill. The cabdriver handed her the $20, with the expectation that she would return his $16 and start again. Instead, defendant kept the $20 and gave the cabdriver $4 from the $16 he had given her as change. The cabdriver left the money where defendant had placed it, on the console between the two front seats, and said that she was paying him from the change he had given her. Defendant said the cabdriver was "confusing her" and grabbed back the $4. Defendant grabbed the door handle, but the cabdriver activated the security locks.

The cabdriver told defendant to return the money he had given her and leave, and said he would not charge her for the ride, saying he "didn't want any problems" and the $4 would

not make him "richer or poorer." Defendant became angrier, and refused to return the money or to leave. The cabdriver said he would take defendant to the police precinct. Defendant put the $16 on the console and the cabdriver unlocked the doors, but defendant would not get out. The cabdriver held the money with his right hand, and eventually drove toward the police precinct.

Defendant leaned forward and tried to grab the cabdriver's right hand, the hand that was holding the $16. Accusing the cabdriver of trying to steal her money, she tried to get the cash from him. She pulled on, scratched and bit his hand, leaving marks and some blood.

The cabdriver stopped at 107th Street and Lexington Avenue, and noticed that his hand was injured. Defendant began looking for something in her bag, stating, "now you're going to see." The cabdriver turned and saw that defendant was holding up a blade. Seconds later, the cabdriver saw two police officers, Edward Arias and Pete Rios, crossing the street. The cabdriver got out of the car and called them over. He told them there was a knife in the car and showed them his hand. It had cuts and abrasions, with the skin peeled back, and visible blood.

Defendant, still sitting in the back seat, held money in one hand and an open folding knife, with the blade visible, in the other. She was extremely agitated and "borderline incoherent." When she made eye contact with Officer Arias, she quickly put the knife back into her purse. The officers asked her several times to get out of the car, but defendant refused. Eventually, the officers had to pull her out physically. Defendant did not appear to understand why she was being arrested. Arias took the money from her hand and retrieved from her bag the knife with a sharp, three-inch-long blade. Defendant then refused to get into the police car and resisted the officers' efforts to place her inside. Defendant was at the precinct for over four hours, during which time she no longer seemed incoherent. The cabdriver was treated at the hospital for the injuries to his hand.

Defendant was charged with attempted robbery in the first degree (uses or threatens the immediate use of a dangerous instrument), attempted robbery in the second degree (causes physical injury to another), criminal possession of a weapon in the third degree, assault in the third degree (intentionally causes physical injury) and menacing in the second degree.

Defendant proceeded to trial on July 16, 2008. The main theory upon which the defense relied to combat the robbery charge

was that defendant was mistaken about whether the cabdriver owed her money and that this mistake negated the larcenous intent element of robbery. To refute this theory the prosecutor requested that the court instruct the jury that a claim of right is not a defense to robbery. Defense counsel objected, arguing that such a charge would confuse the jury, would shift the burden on larcenous intent and direct a verdict for the People. Defense counsel also requested that the court charge the jury that a reasonable mistake of fact would be a defense against robbery, because it could negate the larcenous intent element. Counsel maintained that this charge differed from a claim of right defense.

The court ruled that it would give the negative claim of right charge, but not the mistake in fact instruction the defense requested. The court also determined that it would instruct the jurors that an element of robbery was the intent to deprive another person of property, in particular the owner, and give an expanded charge on intent. The defense would be permitted to argue that defendant did not intend to steal, and that she believed that the money belonged to her.

Accordingly, the court gave an extended instruction on intent:

> "Intent means conscious objective or purpose . . . A person acts with intent to commit robbery in the first degree when his or her specific intent, that is conscious objective or purpose, is to commit robbery in the first degree. That is, when the person's conscious objective or purpose is to deprive another of property or to appropriate property to herself by the use of force, specifically by the use or threat of the immediate use of a dangerous instrument, for the purpose of compelling the owner of such property to deliver up the property.

> "Intent does not require premeditation, though. Intent does not require advanced planning, nor is it necessary that the intent be in a person's mind for any particular period of time. The intent may be formed and need only exist at the very moment the person engages in prohibited conduct or acts to cause the prohibited result, and not at any earlier time.

> "The question naturally arises as to how to determine whether or not a defendant had the intent

required for the commission of a crime. To make that determination in this case you must decide if the required intent can be inferred beyond a reasonable doubt from the proven facts. In doing so you may consider the person's conduct, all of the circumstances surrounding the conduct."

After defining attempted robbery in the first and second degrees, including the above expanded instruction on intent, the court instructed the jury that

"[n]ow, with respect to the [robbery counts] I charge you also, jury members that the law does not permit one person to use force to take money from another person, even where the person doing the taking honestly believes he or she is entitled to take the money."

During deliberations, the jury sent a note (it was its second) requesting repetition of the "instruction regarding whether the person thinks they are entitled to property as it relates to the attempted robbery charges." The jury also asked for a "legal definition of 'entitled to'." After discussion with counsel (and over defense counsel's objection) the court answered the jury's question:

"And to answer the remaining question: 'May we have a legal definition of entitled to,' I would say to you, in this context entitled to means that the person has a legal right to possession which is superior to any right of possession of the other person in the transaction.

"Entitled to means having a legal right to possession superior to that of the other person, or of any other person."

The court also repeated that, with respect to the attempted robbery counts, "the law does not permit one person to use force to take money from another person, even where the person doing the taking honestly believes that he or she is entitled to the money."

The next morning, the jury sent a third note requesting the judge to read the instructions on the two attempted robbery counts and the weapons possession count. In response, the court reread the definitions of attempted robbery, first and second degrees, and criminal possession of a weapon in the third degree.

The jury was deadlocked on count one, attempted robbery in the first degree, but convicted defendant of attempted robbery

in the second degree, criminal possession of a weapon in the third degree, assault in the third degree and menacing in the second degree.

On this appeal, defendant focuses primarily on the court's charge to the jury with respect to the attempted robbery count, contending that the charge, as given, in effect directed a verdict on this offense. She also claims that she was denied a right to a fair trial because the court gave the jury written excerpts from the charge.

Intent is an element of robbery that the People must prove beyond a reasonable doubt (*see People v Green*, 5 NY3d 538, 544 [2005] ["because the prosecution must prove beyond a reasonable doubt that the defendant intended to take property from someone with a superior right to possession, a good-faith but mistaken claim of right might defeat a robbery prosecution"]). Thus, in *People v Harrison* (35 AD3d 52, 53 [2006], *lv denied* 8 NY3d 923 [2007]), a case involving a fight over a backpack during which the defendant threatened the owner with a knife, but had claimed the backpack was his, we held it was error for the court to respond "yes" to a jury inquiry asking "[i]f a person attempts to forcibly regain property that he or she truly believed is his or hers, does that make that person subject to the law of attempted robbery"? We reasoned this response left the jury with the mistaken impression that defendant's belief as to the true ownership rights of the backpack was irrelevant.

Even though it is the prosecution's burden to prove the intent element of robbery, the law also discourages "resorting to extrajudicial means in order to protect a property interest" (*People v Reid*, 69 NY2d 469, 476 [1987]). Thus, a defendant who forcibly retakes a specific chattel he or she believes they own is not entitled to a *charge* concerning claim of right, but can still argue claim of right to the jury (*People v Green*, 5 NY3d at 544). However, when a defendant uses force to recover cash allegedly owed as a debt, a claim of right *defense* is not available (*see People v Reid*, 69 NY2d at 475; *see also People v Lueshing*, 306 AD2d 218 [2003], *lv denied* 100 NY3d 643 [2003]). The greater legal restriction regarding forcible taking of money, as opposed to a specific chattel, relies on the fungibility of cash (*see Reid* at 476). There can therefore be no genuine belief as to ownership of cash (*cf. People v Green*, 5 NY3d at 544 [distinguishing *Reid* on the ground that "(t)here, the defendant simply could not have had a true claim of right to the fungible cash—the bills themselves—he took to satisfy an alleged debt. When the rob-

bery is of a particular chattel, however, there can be a genuine belief in ownership of specific property taken"]).

Defendant claims that she mistakenly believed that the actual bills in the cabdriver's hand belonged to her because "she erroneously believed that she had given the cabdriver more money than was due him and that the money he refused to return belonged to her." Thus, defendant argues that her mistaken belief that the cabdriver wrongfully withheld her change negates the culpable mental state of larcenous intent.

Defendant's argument misses the mark. First, under the facts here, we agree with the People that a claim of right and mistake of fact are essentially equivalent. This is because a claim of right for the purposes of the Penal Law is essentially a good faith but mistaken belief as to ownership and defendant claims that she was mistaken as to the ownership of the bills in the hand of the cabdriver. Because a claim of right defense is unavailable to a defendant who uses force to recover cash (*see Reid* at 476), defendant's claim of error is unavailing.

Moreover, it was only defendant's original $20 that she could have thought belonged to her. The bills in the cabdriver's hand were actually the change the cabdriver had originally given defendant in exchange for her $20 bill that the cabdriver had already returned to defendant. The particular bills in the cabdriver's hand never were defendant's property. Indeed, this situation shows the wisdom inherent in the rule in *Reid* that, due to its fungible nature, a defendant cannot have a genuine belief as to ownership of cash. To hold otherwise because defendant believed the money was change to which she was entitled would run counter to a policy that discourages violent self-help. Of course, some forms of cash, a collectible coin, for example, might not be fungible. We need not determine, however, whether defendant would have a legitimate argument had she tried to take back her original $20 bill.

Therefore, we conclude that, even under her view of the facts, defendant was properly convicted of attempted robbery, because the property at issue was cash rather than a particular piece of property. For the same reasons, we find no error in the court's main and supplementary charges. The court properly declined to charge mistake in fact and, given the circumstances of this case, it properly exercised its discretion when it gave the jury an anticipatory instruction that the claim of right defense did not apply (*see e.g. People v Rodriguez*, 52 AD3d 399 [2008], *lv denied* 11 NY3d 834 [2008]; *see also People v Simmons*, 15 NY3d

728 [2010] [viewed in context of jury charge as a whole, court conveyed the proper legal standard regarding intent]).

With respect to defendant's remaining contentions, we find them unavailing. The record, viewed as a whole, establishes that even though defendant did not initially consent to the court's submission of written instructions of the elements of the crimes in response to the jury's request (*see* CPL 310.30), counsel changed her position after further colloquy with the court and, ultimately, consented.

Moreover, the evidence was legally sufficient to establish attempted second degree robbery and the verdict was not against the weight of the evidence. As discussed, even if the trier of fact were to find that defendant mistakenly believed that the money in the cabdriver's hand belonged to her, that belief could not negate larcenous intent. We have considered defendant's remaining contentions and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Marcy L. Kahn, J.), rendered August 7, 2008, convicting defendant, after a jury trial, of attempted robbery in the second degree, criminal possession of a weapon in the third degree, assault in the third degree and menacing in the second degree, and sentencing her, as a second felony offender, to concurrent terms of, respectively, three years on the robbery count, 2 to 4 years, one year and one year, should be affirmed.

ANDRIAS, J.P., SAXE, McGUIRE and FREEDMAN, JJ., concur.

Judgment, Supreme Court, New York County, rendered August 7, 2008, affirmed.