# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1090

KA 09-02474

PRESENT: FAHEY, J.P., PERADOTTO, LINDLEY, SCONIERS, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

                V                         MEMORANDUM AND ORDER

JAFARI LAMONT, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF COUNSEL), FOR DEFENDANT-APPELLANT.

JAFARI LAMONT, DEFENDANT-APPELLANT PRO SE.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (ERIN TUBBS OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (Patricia D. Marks, J.), rendered August 3, 2009. The judgment convicted defendant, upon a nonjury verdict, of attempted robbery in the second degree (two counts).

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum: On appeal from a judgment convicting him following a nonjury trial of two counts of attempted robbery in the second degree (Penal Law §§ 110.00, 160.10 [1], [2] [b]), defendant contends that the evidence is legally insufficient to establish that he intended to steal property forcibly from another person, and that the verdict in that regard is against the weight of the evidence. We reject those contentions. The relevant facts are not in dispute. At approximately 6:30 a.m. on November 1, 2008, an employee of a Wendy's restaurant in Rochester was preparing food for the day when he heard the sound of knocking at the back door, which is not used by the general public. The restaurant was closed at the time. When the employee looked at the security camera, he observed two men outside "banging" on the back door. Both men wore masks and appeared to be brandishing handguns. The employee called 911, and a police officer was dispatched to the scene.

When the officer arrived at the back of the restaurant in a marked patrol vehicle, he observed two men hiding behind a stack of crates. As the officer began to exit his vehicle, the men emerged from behind the crates. One of the men, later identified as defendant, ran directly toward the officer with his gun pointed at the officer, while the other man ran in the opposite direction. Defendant

was wearing a black mask over his face, a black knit hat and black gloves.  The officer pursued defendant and, with the assistance of the K-9 unit, found him hiding between two nearby buildings.  Defendant had a backpack that contained clothing but no gun.  The police later found a black BB gun in the grass behind the restaurant near the location where the men were hiding.  The police also found a vehicle registered to defendant in a parking lot next to the restaurant, and they found a pellet gun inside the vehicle.  Defendant's companion was never apprehended.

The indictment charged defendant with two counts of attempted robbery in the second degree and two counts of attempted burglary in the second degree.  Both counts of attempted robbery alleged, inter alia, that defendant "attempted to forcibly steal property from an employee of the Wendy's restaurant."  At trial, the parties stipulated to the introduction in evidence of the footage from the store security camera, which showed two masked men knocking at the back door and holding pistols.  The parties further stipulated that defendant was the masked man who ran toward the responding officer and was later apprehended.  The three employees of Wendy's who were working that morning testified that they did not know defendant.  County Court convicted defendant of both attempted robbery counts and acquitted him of the attempted burglary counts.

Although defendant concedes that he and his companion "may have been up to no good with their masks and BB guns when they knocked on the door," he contends that the People failed to prove beyond a reasonable doubt that they intended to commit a robbery as opposed to some other crime, such as murder, kidnapping, rape or assault, and thus that the evidence is legally insufficient to support the conviction.  We reject that contention.  "Because intent is an invisible operation of the mind . . . , direct evidence is rarely available (in the absence of an admission) and is unnecessary where there is legally sufficient circumstantial evidence of intent," which may be inferred from defendant's conduct and the surrounding circumstances (*People v Rodriguez*, 17 NY3d 486, 489 [internal quotation marks omitted]).  Here, it may reasonably be inferred from defendant's conduct and the surrounding circumstances that he intended to steal property forcibly from an employee of Wendy's.

Although defendant's mere entry into a store with a gun does not "unequivocally establish that he intended to commit a robbery" (*People v Bracey*, 41 NY2d 296, 301, *rearg denied* 41 NY2d 1010), the evidence also established that none of the Wendy's employees knew defendant; the restaurant was not open to the public when defendant sought entry; defendant and his accomplice were armed with BB guns that appeared to be firearms; defendant and his accomplice wore masks and gloves; and defendant had a backpack into which stolen property could be put. Viewing the evidence in the light most favorable to the People, as we must (*see People v Contes*, 60 NY2d 620, 621), we conclude that there is a " 'valid line of reasoning and permissible inferences [that] could lead a rational person' " to the conclusion reached by the trial court, i.e., that defendant was trying to gain entry into the restaurant with the intent to steal property forcibly from someone

inside (*People v Hines*, 97 NY2d 56, 62, *rearg denied* 97 NY2d 678).
Furthermore, viewing the evidence in light of the elements of the
crime in this nonjury trial (*see People v Danielson*, 9 NY3d 342, 349),
we conclude that the verdict is not against the weight of the evidence
(*see generally People v Bleakley*, 69 NY2d 490, 495).

Although it is possible, as defendant contends, that he intended
to commit a crime other than robbery, e.g., murder, kidnapping, rape
or assault, we conclude that there is "not a reasonable possibility"
that he intended to do so (*Bracey*, 41 NY2d at 303). Because the only
weapons possessed by defendant and his accomplice were BB guns, it is
not reasonable to infer that they intended to murder anyone inside the
restaurant. Similarly, in the absence of evidence that defendant or
his accomplice knew any of the Wendy's employees, it is not reasonable
to infer that they intended to assault one or more of the employees.
Indeed, "[i]n order to find that the defendant[] intended a personal
assault . . . under these circumstances, the [trier of fact] would
have to resort to sheer speculation" (*id.* at 302). Nor is it
reasonable to infer that defendant intended to rape or kidnap someone
in the restaurant. The only reasonable inference to be drawn is that
defendant was attempting to gain entry to the restaurant so that he
could rob someone.

Finally, we reject defendant's contention in his pro se
supplemental brief that he was deprived of effective assistance of
counsel because his trial attorney failed to object to the verdict as
being repugnant. Even assuming, arguendo, that it was factually
illogical for defendant to have committed attempted robbery in the
second degree but not attempted burglary in the second degree, we
conclude that it was not legally or theoretically impossible (*see
People v Muhammad*, 17 NY3d 532, 545; *People v McFadden*, 90 AD3d 413,
414, *lv denied* 18 NY3d 995), inasmuch as the acquittal on the
attempted burglary charges was not "conclusive as to a necessary
element" of the attempted robbery charges (*People v Tucker*, 55 NY2d 1,
7). Where, as here, "there is a possible theory under which a split
verdict could be legally permissible, it cannot be repugnant,
regardless of whether that theory has evidentiary support in a
particular case" (*Muhammad*, 17 NY3d at 540).

All concur except FAHEY, J.P., and PERADOTTO, J., who dissent and
vote to reverse the judgment in accordance with the following
Memorandum: We respectfully dissent because, in our view, the
evidence is legally insufficient to support defendant's conviction of
attempted robbery in the second degree beyond a reasonable doubt
(Penal Law §§ 100.00, 160.10 [1], [2] [b]). We would therefore
reverse the judgment and dismiss the indictment.

It is "an essential of the due process guaranteed by the
Fourteenth Amendment that no person shall be made to suffer the onus
of a criminal conviction except upon sufficient proof—defined as
evidence necessary to convince a trier of fact beyond a reasonable
doubt of the existence of every element of the offense" (*Jackson v
Virginia*, 443 US 307, 316, *reh denied* 444 US 890). "An indispensable
element of the crime of attempted robbery is an intent to forcibly

steal property" (*People v Mateo*, 13 AD3d 987, 988, *lv denied* 5 NY3d 883; *see* Penal Law § 160.00; *People v Pagan*, 81 AD3d 86, 91, *affd* 19 NY3d 91; *People v Miller*, 87 NY2d 211, 214).  Thus, unlike, for example, an attempted burglary conviction (*see People v Mahboubian*, 74 NY2d 174, 193), "[a] conviction of [attempted] robbery cannot stand without proof of specific intent to steal" (*People v DeJesus*, 123 AD2d 563, 564, *lv denied* 69 NY2d 745; *see People v Morales*, 130 AD2d 366, 367-368).  Further, "[t]he use [or threatened use] of force alone is not evidence of an intention to steal" (*People v Rivera*, 184 AD2d 288, 291, *appeal dismissed* 81 NY2d 758).

Here, we conclude that the evidence is legally insufficient to establish beyond a reasonable doubt that defendant specifically intended to commit robbery as charged in the indictment, i.e., that he intended to "forcibly steal property from an employee of the Wendy's restaurant," as opposed to any number of other crimes or misdeeds (*see Mateo*, 13 AD3d at 988; *People v Sharpe*, 222 AD2d 534, 534; *People v Lopez*, 58 AD2d 516, 516).  Unlike many attempted robbery cases, here there is no post-arrest admission by defendant or his unidentified companion that their acts were committed with a specific criminal purpose (*see People v Bracey*, 41 NY2d 296, 301, *rearg denied* 41 NY2d 1010; *cf. People v Montanez*, 57 AD3d 1366, 1367, *lv denied* 12 NY3d 857; *People v Stewart*, 174 AD2d 583, 584, *lv denied* 78 NY2d 1081).  In some cases intent may be inferred from the act itself; however, "in many, if not most attempt cases, it will not be possible to look only at the act and its natural consequences to discover intent since by definition of a criminal attempt the ultimate consequences do not ensue" (*Bracey*, 41 NY2d at 301 [internal quotation marks omitted]).  Here, the fact that defendant and his companion in this case knocked on the door of a closed restaurant while armed with handguns and wearing masks "does not unequivocally establish that [they] intended to commit a robbery" (*id.*).  While it is quite unlikely that their intentions were innocent, defendant and his companion may have intended, for example, to kidnap, rape, assault, or menace an employee of the restaurant, or to gain entry to the restaurant to commit some other crime or mischief therein (*see id.; see generally Mateo*, 13 AD3d at 988; *Matter of Amar A.*, 172 AD2d 426, 426, *lv denied* 79 NY2d 751).  "The act does not speak for itself, as it rarely will in the case of criminal attempt" (*Bracey*, 41 NY2d at 301).

Of course, "intent [may] also 'be inferred from the defendant's conduct and the surrounding circumstances' " (*id.; see People v Steinberg*, 79 NY2d 673, 682; *People v Durden*, 219 AD2d 605, 606, *lv denied* 87 NY2d 900).  In *Bracey* (41 NY2d at 301), upon which the majority relies, the Court of Appeals noted that the fact that one of the defendants "entered a stationery store with a gun in his hand [did] not unequivocally establish that he intended to commit a robbery."  The Court concluded, however, that the conduct of the defendants, coupled with the surrounding circumstances, was sufficient to establish their intent to commit robbery (*id.* at 301-302).  Of critical importance in *Bracey* were the defendants' actions *before* one of the defendants entered the store brandishing a gun (*see id.* at 297-299, 302).  Prior to that point in time, the defendants entered the

store together, cased the area, and purchased a token amount of candy (*id.* at 297). They then left the store, walked around the corner, came back toward the store, and again turned around and walked in the opposite direction (*id.*). Thereafter, they approached a car parked nearby and one of the defendants, who was holding a canvas shoulder bag, entered the car and handed the bag to the other defendant (*id.*). That defendant returned to the store with the bag, from which he later withdrew the gun (*id.* at 297-298). Under those circumstances, the Court concluded that "the jury could well find that the defendants, who acted together throughout, had reconnoitered the store and returned to rob it. In fact the only thing that could have made this intention plainer was an actual demand for money" (*id.* at 301).

Here, by contrast, the evidence established only that defendant and a companion knocked on the back door to Wendy's, and that they possessed what appeared to be handguns. There is no evidence of preparation or prior coordination on the part of defendant and his companion, no statements by defendant or his companion that evidence an intent to steal property, and no actions by either individual that specifically reflect a larcenous intent as opposed to general criminal intent (*see Mateo*, 13 AD3d at 988; *Amar A.*, 172 AD2d at 426). The fact that defendant fled upon the arrival of the police does not add anything to the proof relative to his specific intent. Although evidence of flight from the police may very well indicate guilt on the part of the fleeing suspect (*see generally People v Reynolds*, 269 AD2d 735, 736, *lv denied* 95 NY2d 838, *cert denied* 531 US 945), it does not tend to establish an intent to commit a specific crime. Further, when defendant was taken into custody, he was not found in possession of any items relevant to criminal intent; the police testified that his backpack contained clothing only. In our view, defendant's "robbery conviction may not rest on so deficient an evidentiary foundation" (*DeJesus*, 123 AD2d at 564; *cf. People v Bryant*, 36 AD3d 517, 518, *lv denied* 8 NY3d 944; *People v Wilson*, 10 AD3d 460, 461, *lv denied* 3 NY3d 743; *People v Tavares*, 235 AD2d 325, 326; *People v Harris*, 191 AD2d 643, 643-644, *lv denied* 81 NY2d 1014).

The majority concludes that "there is 'not a reasonable possibility' that [defendant] intended to" commit a crime other than robbery because, inter alia, there is no evidence that "defendant *or his accomplice* knew any of the Wendy's employees" (emphasis added). We note, however, that none of the three employees testified that they did not recognize defendant; they testified only that they did not know an individual by the name of Jafari Lamont. More significantly, because defendant's companion was wearing a mask at the time of the alleged robbery and was never apprehended or identified, we have no idea whether the companion knew one or more of the employees inside the restaurant that morning. Further, even if we concede (and we do not) that it is more probable than not that defendant and his companion were attempting to commit robbery, that is insufficient to sustain a criminal conviction (*see generally Jackson*, 443 US at 315-316).

In sum, we conclude that the evidence is legally insufficient to establish beyond a reasonable doubt that defendant intended to steal

property from an employee of Wendy's (*see Mateo*, 13 AD3d at 988; *People v D'Agostino*, 266 AD2d 227, 228, *lv denied* 94 NY2d 918; *Sharpe*, 222 AD2d at 534). Alternatively, we conclude that County Court's determination in this nonjury trial that the evidence presented by the People established defendant's larcenous intent is against the weight of the evidence (*see People v Farkas*, 96 AD3d 873, 874-875; *People v Farrell*, 61 AD3d 696, 697). We would therefore reverse the judgment, dismiss the indictment, and remit the matter to County Court for proceedings pursuant to CPL 470.45.

Entered: January 3, 2014

Frances E. Cafarell
Clerk of the Court