McCarthy, J.
Appeal from a judgment of the County Court of Schenectady County (Drago, J.), rendered October 1, 2010, upon a verdict convicting defendant of the crimes of criminal diversion of prescription medications and prescriptions in the fourth degree and official misconduct.
Defendant, who was then a detective with the City of Schenectady Police Department, was charged by indictment with three counts of criminal diversion of prescription medications and prescriptions in the fourth degree and one count of official misconduct. The criminal diversion charges were based on allegations that defendant provided Susan Jewett with cash, groceries and other items in exchange for Jewett’s prescription medications. The official misconduct charge was based on an incident where defendant, while off-duty, flashed her badge at a pharmacist filling Jewett’s prescription and inquired whether the pharmacist could speed things up. Two of the criminal diversion charges were dismissed during trial, but defendant was convicted of official misconduct and one count of criminal diversion. County Court imposed a sentence of three years of probation. Defendant appeals.
The evidence was not legally sufficient to support the criminal diversion charge. “A person is guilty of criminal diversion of prescription medications and prescriptions in the fourth degree when he or she commits a criminal diversion act” (Penal Law § 178.10). A criminal diversion act may include “an act or acts in which a person knowingly . . . receives, in exchange for anything of pecuniary value, a prescription medication . . . with knowledge or reasonable grounds to know that the seller or transferor is not authorized by law to sell or transfer such prescription medication” (Penal Law § 178.00 [3] [b]). A prescription medication is defined as “any article for which a prescription is required in order to be lawfully sold, delivered or distributed by any person authorized by law to engage in the practice of the profession of pharmacy”' (Penal Law § 178.00 [1]). To prevail on this charge, the People had to prove that the substance transferred from Jewett to defendant “was, in fact, a prescription medication ... as opposed to an ‘over-the-counter-drug’ ” that can be sold without a prescription (People v Ross, 12 Misc 3d 755, 760 [2006]; see People v Khan, 82 AD3d 44, 55 n 7 [2011], affd 18 NY3d 535 [2012]; compare People v Polanco, 24 Misc 3d 406, 409-410 [2009]).
*1205 At trial, several pharmacy employees testified that the muscle relaxant Soma (or its generic form, Carisoprodol) was not a controlled substance.[1] Although the record contains Jewett’s prescriptions for Soma—the same medication that she apparently gave or sold to defendant in the transaction that resulted in the criminal diversion conviction—there is no evidence that a prescription is “required” for a person to lawfully obtain that medication (Penal Law § 178.00 [1]). While it may seem logical to infer that a prescription is required if one was obtained for that medication, such logic is faulty. Some medications are available either with or without a prescription (see 26 USC §§ 106 [f] [stating that expenses for medication are reimbursable from pre-tax health savings accounts and flexible spending accounts “only if such medicine or drug is a prescribed drug (determined without regard to whether such drug is available without a prescription)”]; 223 [d] [2] [A] [same]; 220 [d] [2] [A]; Martin J. McMahon, Jr., et al., Recent Developments in Federal Income Taxation: The Year 2010, 10 Fla Tax Rev 565, 626 [2011]; The Emergency Contraception Website, http://ec.princeton.edu/ locator/concerned-about-cost.html [accessed Feb. 5, 2014] [stating that in some states, Medicaid covers over-the-counter purchases of emergency contraception, while in other states a person may need a prescription to obtain Medicaid coverage for the pills]; Medpage Today’s KevinMD.com, Making More Drugs Non-prescription is Bad for Patients, http://www.kevinmd.com/ blog/2012/04/making-drugs-nonprescription-bad-patients.html [accessed Feb. 5, 2014]). Individuals may obtain prescriptions for such medications, even if not required, for various reasons, including to obtain insurance coverage that may not apply to over-the-counter medications (see Tasha M. LaSpina et al., Access to Contraception, 11 Geo J. Gender & L 371, 404 [2010] [noting that 1990 amendments to the Medicaid Act permitted states to exclude coverage for nonprescription drugs]; see e.g. Cigna, http://www.cigna.com/pdf/839232_HCR_Preventive_ Care_V02.pdf [accessed Feb. 5, 2014] [stating that “(f)or preventative medications (including over-the-counter medications) or products to be covered, you’ll need to get a prescription from your doctor”]; Neighborhood Health Plan, https:// www.nhp.org/ member/benefits/pharmacy/pages/over-the-counter-drug-benefit.aspx [accessed Feb. 5, 2014] [noting that participants must have a valid prescription to take advantage of the insurance plan’s over-the-counter drug benefit]), or to *1206 obtain reimbursement from a pre-tax health savings account or flexible spending account (see 26 USC §§ 106 [f]; 223 [d] [2] [A]; 220 [d] [2] [A]; Internal Revenue Service, Affordable Care Act: Questions & Answers on Over-the-Counter Medicines and Drugs, http://www.irs.gov/uac/Affordable-Care-Act:-Questions-andAnswers-on-Over-the-Counter-Medicines-and-Drugs [accessed Feb. 5, 2014]; Insure.com, How do I get a “prescription” for an over-the-counter drug in order to pay for it with my HSA?, http:// www. insure. com/articles/healthinsurancefaq/health-insuranceprescriptions-over-the-counter-hsa.html [accessed Feb. 5, 2014]; Jerry Geisel, FSA Can’t Reimburse OTC Drugs Without Prescription: IRS, Business Insurance [Sept. 7, 2010], http:// www.businessinsurance.com/article/20100907/NEWS/100909937 [accessed Feb. 5, 2014]). The People did not prove an element of criminal diversion of prescription medications and prescriptions in the fourth degree—i.e., that the pills received by defendant met the definition of a prescription medication (see Penal Law § 178.00 [1]; People v Ross, 12 Misc 3d at 760-761). Accordingly, we must reverse the conviction for that crime and dismiss that count of the indictment.
The evidence was also not legally sufficient to support the official misconduct charge. “A public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit. . . [h]e [or she] commits an act relating to his [or her] office but constituting an unauthorized exercise of his [or her] official functions, knowing that such act is unauthorized” (Penal Law § 195.00 [1]). The statute was ‘‘intended to encompass flagrant and intentional abuse of authority by those empowered to enforce the law” (People v Feerick, 93 NY2d 433, 445 [1999]). A conviction for official misconduct must be supported by proof that a defendant knew that his or her acts were unauthorized, so as to “negate[ ] the possibility that the misconduct was the product of inadvertence, incompetence, blunder, neglect or dereliction of duty, or any other act, no matter how egregious, that might more properly be considered in a disciplinary rather than a criminal forum” (id. at 448 [emphasis omitted]; compare People v Rossi, 69 AD2d 778, 779 [1979], affd 50 NY2d 813 [1980]).
Defendant, employed as a police detective, was a public servant (see Penal Law § 10.00 [15]). Considering defendant’s statement to the pharmacist, the jury could infer that defendant intended to obtain a benefit—getting Jewett’s prescriptions filled more quickly—by flashing her badge and identifying *1207 herself as a police officer. In light of testimony that police officers are sometimes required to identify themselves as such and show their badges, defendant’s actions were related to her office as a police detective and to her official functions (see People v Moreno, 100 AD3d 435, 437 [2012], lv denied 20 NY3d 987 [2012]; People v Gray, 172 Misc 2d 14, 19-22 [1997]; compare People v Lucarelli, 300 AD2d 1013, 1014 [2002]). A police officer’s actions fall within his or her official functions “even if the right to perform [them] did not exist in the particular case” (People v Chapman, 13 NY2d 97, 101 [1963]), such as when the officer was off-duty (compare People v Rossi, 69 AD2d at 779). The elements truly at issue here are whether flashing a badge while off-duty to obtain faster service was an unauthorized act and, if so, whether defendant knew that such act was unauthorized.[2]
Defendant contends that official misconduct can only be substantiated where the public official violated a specific rule, regulation or policy governing the official’s position. While some official misconduct cases have involved such violations (see e.g. People v Gordon, 72 AD3d 841, 841-842 [2010], lv denied 15 NY3d 920 [2010]; People v Haywood, 201 AD2d 871, 871 [1994]), many others do not contain any specific rule violation (see e.g. People v Feerick, 93 NY2d at 448; People v Moreno, 100 AD3d at 437; People v Connolly, 63 AD3d 1703, 1704 [2009]). Nor does the plain language of the statute require violation of a specific rule or policy (see Penal Law § 195.00 [1]). Absent a formal rule, however, the conduct at issue must be such that a public officer should know that it “constitut[es] an unauthorized exercise of his [or her] official functions” (Penal Law § 195.00 [1]).
Here, a captain with the City of Schenectady Police Department testified that a department rule required officers to identify themselves by name, rank and badge number when requested. He testified that there was no policy that authorizes officers to show their badges when on personal matters, but further testified that there was no specific rule stating that officers were not authorized to identify themselves as such or display their badges in off-duty situations. The department rules, at least to the extent that they were included in the record, are silent on this topic. Additionally, this is not a situation where defendant disobeyed the directions of a superior officer after being advised to proceed in a particular manner, which would sup *1208 port the allegations that the action was unauthorized (compare People v Feerick, 93 NY2d at 448-449).
While it is inappropriate and unfair for a police officer to use his or her position to receive faster service while on personal errands, the People did not present legally sufficient evidence to establish that defendant’s actions in flashing her badge to encourage a pharmacist to fill Jewett’s prescriptions faster constituted criminal conduct as opposed to professional misconduct, “no matter how egregious, that might more properly be considered in a disciplinary rather than a criminal forum” (People v Feerick, 93 NY2d at 448; see Penal Law § 195.00 [1]; compare People v Watson, 32 AD3d 1199, 1202 [2006], lv denied 7 NY3d 929 [2006]; People v Lucarelli, 300 AD2d at 1014; People v Maloney, 233 AD2d 681, 681-682 [1996]). Accordingly, we reverse the conviction of official misconduct and dismiss that count of the indictment.
Based on our dismissal of both counts due to the lack of legally sufficient evidence, we need not address defendant’s remaining contentions, although we note that reversal would have been required based on the deluge of improper Molineux evidence admitted during trial (see People v Buskey, 45 AD3d 1170, 1172-1174 [2007]; People v Wlasiuk, 32 AD3d 674, 676-678 [2006], lv dismissed 7 NY3d 871 [2006]; People v Wallace, 31 AD3d 1041, 1042-1045 [2006]; see also People v Wilkinson, 71 AD3d 249, 253-257 [2010]).
Lahtinen, J.P, Garry and Egan Jr., JJ, concur.
Ordered that the judgment is reversed, on the law, and indictment dismissed.

. The Legislature has since amended Public Health Law § 3306 to classify Carisoprodol as a narcotic drug (see L 2012, ch 447, § 2, part C, § 12; Public Health Law § 3306 [IV] [c] [53]).

. The People contend that the act was unauthorized because it was in furtherance of a crime. We will not consider this argument because, although defendant was indicted on a criminal diversion charge related to her actions on that date, she was not convicted of that count.