*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 22, 2015                    106816
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                   MEMORANDUM AND ORDER

NORMAN J. MICHAELS JR.,
                        Appellant.
_____

Calendar Date:   September 15, 2015

Before:  Peters, P.J., Lahtinen, McCarthy and Lynch, JJ.

_____

        Zuckerman Spaeder, LLP, New York City (Paul Shechtman of
counsel), for appellant.

        John M. Muehl, District Attorney, Cooperstown (Michael F.
Getman of counsel), for respondent.

_____

Peters, P.J.

        Appeal from a judgment of the County Court of Otsego County
(Lambert, J.), rendered July 21, 2014, upon a verdict convicting
defendant of the crimes of grand larceny in the second degree and
scheme to defraud in the first degree.

        Defendant, an insurance broker of nearly 40 years, was
charged with crimes stemming from his involvement in an allegedly
fraudulent scheme in which more than 400 people were enrolled in
health insurance policies for which they were purportedly not
eligible.  The trial evidence established that, in January 2008,
the Otsego County Chamber of Commerce (hereinafter the Chamber)
and MVP Health Insurance Company entered into an agreement
whereby members of the Chamber could purchase health insurance

from MVP under the Chamber's group policy. The "Eligibility" provision of the agreement provided that, in order to be eligible for coverage, an individual or entity "must satisfy [the Chamber's] eligibility requirements." Notably, the agreement did not purport to define such eligibility requirements; instead, it expressly stated that the Chamber would establish the criteria for insurance under its group policy.[1]

In the fall of 2008, defendant and codefendant Robert R. Robinson, the chief executive officer of the Chamber, entered into an arrangement whereby defendant's company became the broker of record for the Chamber. Pursuant to that arrangement, defendant agreed to perform customer service for those individuals who had purchased MVP insurance policies through the Chamber, in return for which he would receive a brokerage commission from MVP of five percent of the premiums that it collected. In 2010, a new class of Chamber members arose — referred to as "associate members" — who only took advantage of the Chamber's insurance plan. According to defendant, Robinson explained to him that any member organization that became a member of the Chamber could access for its own constituents the benefits associated with membership in the Chamber regardless of the individual's connection to Otsego County. Testimony showed that a number of organizations and associations thereafter joined the Chamber and began marketing MVP insurance to their members. Members of such organizations who elected to purchase MVP insurance through the Chamber group policy became "associate members" of the Chamber and were charged a monthly $5 Chamber membership fee and a $5 administrative fee in addition to their health insurance premiums. By September 2010, defendant had enrolled more than 400 associate members in MVP insurance though the Chamber's group policy, as a result of which he was paid approximately $63,000 in commissions from MVP. Upon discovering that individuals who had no connection to Otsego County were

_____

[1] The only conditions placed on the eligibility requirements were that they be established in a manner consistent with state and federal laws and regulations, applied in a fair and consistent manner, and similar to those adopted for other health care options.

being enrolled through the Chamber group policy, MVP cancelled all insurance policies that had been issued through the Chamber agreement, regardless of their legitimacy.

Almost three years later, defendant and Robinson were charged by indictment with, as relevant here, grand larceny in the second degree, grand larceny in the third degree and scheme to defraud in the first degree.[2]  The bill of particulars specified that defendant enrolled applicants into MVP insurance plans offered through the Chamber knowing that those individuals were ineligible for such coverage because they were not legitimate members of the Chamber, and that defendant and Robinson wrongfully created a new class of "[a]ssociate [m]embers" in the Chamber to promote this allegedly impermissible arrangement.  Defendant's case was severed from that of Robinson and, following a jury trial, he was acquitted of grand larceny in the third degree but convicted of grand larceny in the second degree and scheme to defraud in the first degree.  County Court sentenced him to six months in jail, five years of probation and 500 hours of community service, and imposed a $5,000 fine.

Defendant appeals, asserting that his convictions for grand larceny and scheme to defraud are not supported by legally sufficient evidence.  A person is guilty of grand larceny in the third degree when he or she, "with intent to deprive another of property or to appropriate the same to himself [or herself], . . . wrongfully takes, obtains or withholds such property from an owner" and the value of the property exceeds $50,000 (Penal Law § 155.05 [1]; see Penal Law § 155.40 [1]; People v Waugh, 52 AD3d 853, 854 [2008], lv denied 11 NY3d 796 [2008]).  Larcenous intent "'is rarely susceptible of proof by direct evidence, and must usually be inferred from the circumstances surrounding the defendant's actions'" (People v Brown, 107 AD3d 1145, 1146 [2013], lv denied 22 NY3d 1039 [2013], quoting People v Russell, 41 AD3d 1094, 1096 [2007], lv denied 10 NY3d 964 [2008]).  In a prosecution for larceny by trespassory taking, it is a defense

_____

    [2]  A count of the indictment charging defendant with insurance fraud in the second degree was dismissed prior to trial.

"that the property was appropriated under a claim of right made in good faith" (Penal Law § 155.15 [1]).  A good-faith claim of right negates larcenous intent, and the People have the burden of disproving such defense beyond a reasonable doubt (see People v Zona, 14 NY3d 488, 492-493 [2010]; People v Green, 5 NY3d 538, 542 [2005]).

In analyzing the legal sufficiency of a conviction, we must view the evidence in a light most favorable to the People and "determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Bleakley, 69 NY2d 490, 495 [1987] [citation omitted]; see People v Lee, 129 AD3d 1295, 1297 [2015]).  Here, the People's entire case rested upon the theory that the approximately 400 individuals enrolled by defendant, having no connection to Otsego County, were ineligible to receive MVP insurance coverage through the Chamber group policy.  To that end, the People presented the testimony of two MVP employees who stated that, in addition to being a member of the Chamber, MVP required that an individual or entity have some residential or business connection to Otsego County in order to receive insurance under the Chamber group policy.  However, the agreement between MVP and the Chamber does not contain any such geographic restriction.  Rather, as noted, the contract expressly grants to the Chamber the power to determine eligibility requirements for insurance through its group policy.  The testimony as to what MVP may have intended, but failed to expressly state in the agreement, cannot serve to elevate defendant's conduct to a crime, as "[t]he written terms and conditions of a contract define the rights and obligations of the parties" (Matter of Ongweoweh Corp., 130 AD3d 1291, 1291 [2015] [internal quotation marks and citation omitted]; see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]).

Although the establishment of eligibility requirements for insurance under the group policy was left to the Chamber, it does not appear that such requirements have ever been memorialized or otherwise formally documented, and the People's witnesses failed to provide consensus as to eligibility.  Moreover, no documentary

evidence concerning Chamber membership eligibility was presented. Even if a rational jury could find that eligibility for MVP insurance under the Chamber group policy was contingent upon Chamber membership, that only individuals or businesses with a connection to Otsego County could become a full member of the Chamber, and that "associate members" were not legitimate members of the Chamber because this category of membership had not been formally authorized by the Chamber, it was unreasonable for jury to conclude that the People proved beyond a reasonable doubt that defendant did not have a subjective, good-faith basis for believing that associate members were legitimate members of the Chamber and, thus, eligible to receive coverage under the group policy (see People v Rios, 107 AD3d 1379, 1382 [2013], lv denied 22 NY3d 1158 [2014]; see generally People v Zona, 14 NY3d at 492-494).

Defendant was fully aware that the contract between MVP and the Chamber vested the Chamber with the right to determine the eligibility requirements for insurance under its group policy, and it was his understanding that, as the chief executive officer of the Chamber, Robinson had the authority to determine who became a member of the Chamber and what the necessary qualifications were. No evidence was presented to suggest that defendant should have questioned Robinson's assurances that associate members qualified for insurance under the Chamber's group policy, especially in the absence of any documented eligibility requirements. Further, defendant explained that only after confirming with Robinson that an applicant was a member of the Chamber would he process the application for MVP insurance through the group policy. Notably, there is no evidence that defendant ever submitted any false or inaccurate information to MVP when he enrolled associate members in the Chamber group policy. Thus, viewing the evidence in the light most favorable to the People (see People v Danielson, 9 NY3d 342, 349 [2007]), a finding that defendant acted with larcenous intent when he enrolled associate members in MVP insurance through the Chamber group policy would be based upon "mere conjecture or suspicion" (People v Castillo, 47 NY2d 270, 277 [1979]; see People v St. Andrews, 82 AD3d 1356, 1357-1358 [2011]; People v King, 265 AD2d 678, 680 [1999], lv denied 94 NY2d 904 [2000]; People v Wager, 199 AD2d 642, 642 [1993], lv denied 83 NY2d 811 [1994]).

Accordingly, his conviction for grand larceny in the second degree must be reversed.

We reach a similar conclusion with respect to defendant's conviction for scheme to defraud in the first degree. That crime required proof that defendant "engage[d] in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtain[ed] property from one or more of such persons" (Penal Law § 190.65 [1] [a]; see People v First Meridian Planning Corp., 86 NY2d 608, 616 [1995]). Similar to the grand larceny count, the scheme to defraud charge rested upon the supposition that defendant and Robinson, acting in concert, enrolled individuals as associate members of the Chamber knowing that "there was no such thing" as an associate member, as a result of which each such member paid $10 a month in fraudulent fees. However, like the grand larceny count, there was not legally sufficient evidence from which it can be inferred that defendant shared the criminal intent or purpose of Robinson (see Penal Law § 20.00; see also People v Brigham, 261 AD2d 43, 50-52 [1999], appeal dismissed 94 NY2d 900 [2000]; compare People v Monteiro, 93 AD3d 898, 899-900 [2012], lv denied 19 NY3d 964 [2012]). To the extent that the People attempted to show that, irrespective of the legitimacy of the monthly fees, associate members had not been informed that such fees were included in their premiums, their proof was likewise inadequate. Neither the contract of insurance nor any documentation supplied to the associate members in connection with their purchase of MVP insurance through the Chamber policy was introduced into evidence. The single statement of the sole associate member who testified at trial that he was not "aware" that he was paying the fees was woefully insufficient to establish that such fees were not, in fact, disclosed.

Defendant's remaining arguments have been rendered

academic by our decision.

Lahtinen, McCarthy and Lynch, JJ., concur.


ORDERED that the judgment is reversed, on the law, and indictment dismissed.




ENTER:

Robert D. Mayberger
Clerk of the Court