*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 18, 2016                106396
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,
        v                                    MEMORANDUM AND ORDER

THEODORE HUTCHINS,
                    Appellant.
_____

Calendar Date:  January 12, 2016

Before:  Peters, P.J., McCarthy, Rose and Lynch, JJ.

_____

        O'Connell and Aronowitz, Albany (Scott Iseman of counsel),
for appellant.

        James R. Farrell, District Attorney, Monticello, for
respondent.

_____

McCarthy, J.

        Appeal from a judgment of the County Court of Sullivan
County (LaBuda, J.), rendered January 8, 2014, upon a verdict
convicting defendant of the crimes of official misconduct (two
counts) and coercion in the first degree (two counts).

        At all relevant times, defendant was on the board of
trustees for the Village of Monticello and John LiGreci was the
Village Manager.  Defendant and LiGreci were charged, in a sealed
indictment, with acting in concert to commit two counts of
official misconduct and two counts of coercion in the first
degree based on two directives that LiGreci gave to two different
Police Chiefs.  Both directives pertained to the employment
application of a citizen (hereinafter the candidate) seeking to

become a police officer for the Village. Following a jury trial, defendant was found guilty as charged. He was sentenced to six months in jail, five years of felony probation and 500 hours of community service. Defendant now appeals. Upon our conclusion that there is legally insufficient evidence in regard to multiple elements for each conviction, we reverse.

Evidence is legally sufficient when, "viewing the evidence in the light most favorable to the People," it provides "a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Reed, 22 NY3d 530, 534 [2014] [internal quotation marks and citations omitted]). A person commits official misconduct when, "with intent to obtain a benefit or deprive another person of a benefit[, he or she] commits an act relating to his [or her] office but constituting an unauthorized exercise of his [or her] official functions, knowing that such act is unauthorized" (Penal Law § 195.00 [1]; see People v Barnes, 117 AD3d 1203, 1206 [2014]). "A conviction for official misconduct must be supported by proof that a defendant knew that [the] acts were unauthorized, so as to 'negate the possibility that the misconduct was the product of inadvertence, incompetence, blunder, neglect or dereliction of duty, or any other act, no matter how egregious, that might more properly be considered in a disciplinary rather than a criminal forum'" (People v Barnes, 117 AD3d at 1206, quoting People v Feerick, 93 NY2d 433, 448 [1999] [citation, brackets and emphasis omitted]).

To commit coercion in the first degree, a person must commit coercion in the second degree and compel or induce the victim to "[v]iolate his or her duty as a public servant" (Penal Law § 135.65 [2] [c]). A person commits coercion in the second degree when "he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in . . . by means of instilling in him or her a fear that, if the demand is not complied with, the actor or another will . . . [u]se or abuse his or her position as a public servant by performing some act within or related to his or her official duties . . . in such manner as to affect some person adversely" (Penal Law § 135.60 [8]). Thus, proof of a defendant's guilt of

either official misconduct or coercion in the first degree based on a theory of accessorial liability for an executive's order to a subordinate employee requires proof beyond a reasonable doubt that, objectively, the executive did not have the authority to give such a directive and further that, subjectively, the defendant knew that the executive lacked such authority.

Defendant's convictions are premised upon LiGreci's directive to then Police Chief Doug Solomon to cease a background check on the candidate and his subsequent directive to subsequent Police Chief Mark Johnstone to provide him with answers to questions posed by the Village attorney that regarded a potential lawsuit related to the police department's background check.[1] The People did not cite or introduce into evidence any codified laws, regulations, policies or rules that delineated a Village Manager or Police Chief's respective authority in regard to

---

[1] We reject the People's invitation to consider a new theory of prosecution, raised for the first time on appeal, that defendant's directives to LiGreci are the unauthorized acts. The indictment, the case that the People presented at trial and the charges that were given to the jury all unambiguously identify LiGreci's directives to the Police Chiefs as the relevant acts giving rise to the alleged crimes. Accordingly, the People's argument is unpreserved given that the People never sought jury instructions that would permit the jury to consider that theory (see CPL 470.05 [2]; People v Morrison, 110 AD3d 1380, 1381 [2013], lv denied 22 NY3d 1201 [2014]). Further, raising a theory of prosecution after the conclusion of a trial deprives a defendant of fair notice, the meaningful opportunity to present a defense at trial and of the right to have a jury decide the facts that subject the defendant to criminal liability (see generally Apprendi v New Jersey, 530 US 466, 483-484 [2000]; People v Grega, 72 NY2d 489, 495-496 [1988]). In any event, the People's newly raised theory is without merit. The record contains no proof that could reasonably be construed as delineating the limitations of a Village trustee's authority to give directives to a Village Manager. Therefore, no rational factfinder could conclude, beyond a reasonable doubt, that defendant's directives to LiGreci were unauthorized.

employment background checks or that related to the instances in which a Police Chief can, or cannot, disregard his or her supervisor's directive to answer questions.[2] Accordingly, the People were left with the task of proving beyond a reasonable doubt that LiGreci lacked the authority to give such orders despite the absence of any codification that supported that contention; relatedly, they were also tasked with proving beyond a reasonable doubt that defendant did not have a subjective good faith belief that LeGreci had the authority to give such directives (see generally People v Michaels, 132 AD3d 1073, 1076-1077 [2015]; People v Rios, 107 AD3d 1379, 1381-1382 [2013], lv denied, 22 NY3d 1158 [2014]).

We first turn to the proof regarding the executive authority over background checks of candidates seeking employment as police officers of the Village. Multiple witnesses familiar with the functioning of the Village's government confirmed that the Village Manager — LiGreci — had the sole authority to make hiring decisions for the municipal departments, including the police department. Further, it is uncontested that the Village Manager serves as a supervisor to the Police Chief. In addition, LiGreci testified that it was within his authority as the Village Manager to halt the background check.

During his testimony, Solomon admitted that no law tasked him with the responsibility to conduct background checks. Further, he never indicated that the Village had vested him with the authority to conduct background checks. To the contrary, Solomon explained that he had created the background check procedure used for police officer candidates. Considering this evidence, no rational juror could conclude that LiGreci's directive to halt the background check was unauthorized.[3]

---

[2] We note that policy documents that the police department created itself are insufficient to establish that the Village vested the police department or Police Chief with any particular authority.

[3] To the extent that LiGreci's stated justification for halting the background check was that it had proceeded in an

Further, even assuming that the record contained legally sufficient proof to establish this element, we nonetheless conclude that the record contains no evidence that defendant had the requisite knowledge that the directive was unauthorized. Considering the proof that LiGreci's power to hire personnel was well known within the Village and the fact that the record contains no evidence that defendant was ever informed of Solomon's supposed duty to conduct background checks, there was legally insufficient evidence to establish the requisite mental state (see Penal Law § 20.00; People v Michaels, 132 AD3d at 1076).  Accordingly, we reverse defendant's convictions of official misconduct under count 7 of the indictment and coercion in the first degree under count 8 of the indictment.

We reach a similar conclusion regarding LiGreci's directive to Johnstone — Solomon's successor as Police Chief — to provide answers to questions related to the candidate's background check, which was the subject of potential civil litigation.  When Johnstone was asked why he felt that he was entitled to disregard a supervisor's directive to provide answers to questions posed by the Village attorney,[4] Johnstone explained that he had sought

_____

inappropriate manner, we note that a recorded telephone conversation relating to the background check revealed an officer inquiring into topics such as whether the candidate associated with "undesirable people" and whether the candidate lived with a paramour "out of wedlock."  Further, Solomon admitted that he had already made up his mind about the candidate's qualifications before beginning the background check, and agreed that "no matter how long any investigation lasted, no matter how many people were interviewed, no matter how many documents were retrieved [and] no matter how many psychological examinations were performed, nothing was going to change [his] opinion" that the candidate was unsuitable to be a police officer.

[4]  Inasmuch as the crime of coercion in the second degree required additional proof that LiGreci instilled in Johnstone a fear of LiGreci creating an adverse consequence for Johnstone if he failed to comply with the order (see Penal Law § 135.60 [8]), the uncontradicted proof shows that Johnstone did not believe

counsel from Sullivan County District Attorney James Farrell and, as a result, knew that there was a pending criminal investigation of the candidate and of LiGreci. Johnstone averred that, based on the existence of such criminal investigation, he had a duty not to answer the questions. Contrary to Johnstone's reasoning, however, the police department's prior human resources work was not the subject of the criminal investigation, and there would be no legitimate reason to keep information related to their human resource activities confidential from the Village.

The remainder of Johnstone's testimony renders it unreasonable to conclude that he believed that he had a legal right or obligation to refuse to answer the questions. As Johnstone testified, when a different supervisor gave him a directive to answer the same questions for LiGreci, Johnstone immediately complied.[5] In regard to this compliance, Johnstone explained: "If you don't follow a direct order[,] you are considered insubordinate and . . . suspended." The record is silent as to any explanation from Johnstone that could reasonably reconcile his testimony that it was his "legal right not to answer [the questions]" when LiGreci directed him to do so but that it would have been "insubordinat[ion]" not to answer the questions when a different supervisor made the exact same request.

Finally, the record contains no proof that could support a reasonable conclusion that defendant knew, prior to LiGreci's directive, that a criminal investigation had been commenced that deprived LiGreci of the authority to have Johnstone answer the questions (see generally Penal Law § 20.00; People v Kaplan, 76

that LiGreci had made efforts to instill such fear; when asked whether he was ever threatened by LiGreci in respect to answering the questions, Johnstone unequivocally answered "no."

[5]   Were we to focus on an element unique to coercion in the second degree, this evidence leads to the single reasonable conclusion that Johnstone was "compel[led] or induce[d]" to answer the questions by this supervisor, and not by LiGreci, whose order Johnstone had disregarded (Penal Law § 135.60).

NY2d 140, 146 [1990]).  To the extent that proof was presented on the issue of knowledge, it tended to suggest the exact opposite conclusion – that defendant remained ignorant of the apparently confidential criminal investigation.  Johnstone testified that he never informed LiGreci of the ongoing criminal investigation, and he explained that he did not want certain people to learn about the criminal investigation, including defendant.  Accordingly, the only relevant proof in the record is that, at a minimum, the police department was attempting to keep LiGreci and defendant ignorant of the criminal investigation.  Further, the only reasonable inference to draw from Johnstone's testimony was that he understood defendant to be unaware of the criminal investigation at that point in time.  Accordingly, no rational juror could find that defendant knew that LeGreci was not authorized to give the directive due to an ongoing criminal investigation (compare People v Robinson, 60 NY2d 982, 986 [1983]).  Based on the foregoing, we reverse defendant's remaining convictions of official misconduct under count 9 of the indictment and coercion in the first degree under count 10 of the indictment.  Given our conclusion that the evidence was legally insufficient in regard to each of defendant's convictions, his remaining contentions are rendered academic.

        Peters, P.J., Rose and Lynch, JJ., concur.


        ORDERED that the judgment is reversed, on the law, and indictment dismissed.




                          ENTER:


                          Robert D. Mayberger
                          Clerk of the Court