Michaels v MVP Health Care, Inc. (2018 NY Slip Op 08986)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Michaels v MVP Health Care, Inc.

2018 NY Slip Op 08986

Decided on December 27, 2018

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 27, 2018

526579

[*1]NORMAN MICHAELS, Respondent,
vMVP HEALTH CARE, INC., et al., Appellants, et al., Defendant.

Calendar Date: November 16, 2018
Before: Garry, P.J., McCarthy, Egan Jr., Devine and Clark, JJ.


Greenberg Traurig, LLP, Albany (Henry M. Greenberg of counsel), for appellants.
Jones Morrison, LLP, Scarsdale (Jeffrey Briem of counsel), for respondent.

MEMORANDUM AND ORDER
McCarthy, J.
Appeal from an order of the Supreme Court (Buchanan, J.), entered August 30, 2017 in Schenectady County, which, among other things, partially denied defendants' motion to dismiss.
Plaintiff ran an insurance brokerage firm for many years. Between 2008 and early 2011, plaintiff acted as an insurance broker for defendant MVP Health Care, Inc. under a written independent broker's agreement. Separately, MVP entered into an agreement with the Otsego County Chamber of Commerce (hereinafter the Chamber) that would allow Chamber members to purchase health insurance from MVP via a group plan. Plaintiff agreed with the Chamber to act as its insurance broker, in exchange for a 5% commission on all premiums that MVP collected for policies purchased under this plan.
The Chamber began allowing associations to join its membership under a limited-benefits category that would allow members of those associations to obtain MVP health insurance through the Chamber's group plan, even if an individual had no connection to Otsego County. They were referred to as associate members or insurance members. Many of them resided in New York City, on Long Island or in other states. In October 2010, after noticing the large number of new enrollments in the Chamber's plan, MVP commenced an internal investigation, led by defendant James Pescetti. Pescetti learned that many of the new enrollees did not reside in Otsego County and, upon interviewing them, many stated that they had no affiliation with the Chamber. MVP then reported these suspected fraudulent insurance transactions to the Department of Financial Services (hereinafter DFS) pursuant to Insurance Law § 405 (a). Upon MVP's report, DFS's frauds bureau initiated an investigation, including taking two written statements from Pescetti. MVP also terminated its broker agreement with plaintiff, for cause, and canceled all insurance policies under the Chamber's group plan.
In April 2013, DFS investigators arrested plaintiff for grand larceny and conspiring to create the associate membership category of insured persons so as to enable non-Chamber affiliates to wrongfully enroll in the Chamber's health insurance plan. In October 2013, the Otsego County District Attorney presented the case to a grand jury. The presentation included testimony from Pescetti and defendant Karrie Armstrong, another MVP employee. The grand jury returned a four-count felony indictment against both plaintiff and Robert Robinson, the Chamber's chief executive officer. In May 2014, after a jury trial, plaintiff was convicted of grand larceny in the second degree and scheme to defraud in the first degree;[FN1] however, in October 2015, this Court vacated plaintiff's convictions and dismissed the indictment against him (People v Michaels, 132 AD3d 1073, 1078 [2015]).
Plaintiff commenced this action against MVP and several of its employees alleging malicious prosecution, breach of the covenant of good faith and fair dealing and prima facie tort. Defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). Supreme Court dismissed all causes of action against defendant Matthew Walkuski and also dismissed the breach of the implied covenant of good faith and fair dealing claim against Pescetti and Armstrong, but denied the motion in all other respects. MVP, Pescetti and Armstrong (hereinafter collectively referred to as defendants) appeal.
Supreme Court properly concluded that, at this pleadings stage of the action, defendants are not entitled to dismissal of the complaint based on immunity. Anyone engaged in the insurance business has a statutory obligation to report to DFS the factual circumstances of any insurance transaction that the person has reason to believe may be fraudulent (see Insurance Law § 405 [a]). Related to this reporting requirement, Financial Services Law § 405 provides that, "[i]n the absence of fraud or bad faith, no person subject to the provisions of this chapter . . . shall be subject to civil liability, and no civil cause of action of any nature shall arise against such person for any: (a) information relating to suspected violations of . . . the insurance law furnished to law enforcement officials, their agents and employees; . . . and (c) information furnished in reports to the financial frauds and consumer protection unit, its agents or employees or any state agency investigating fraud or misconduct." This statutory immunity is expressly abrogated by fraud or bad faith, which includes "intentionally knowing wrongful conduct in the filing of a report to" DFS (Zellermaier v Travelers Indem. Co. of Ill., 190 Misc 2d 487, 489 [Sup Ct, NY County 2002], appeal dismissed 308 AD2d 680 [2003]).
Here, plaintiff specifically alleged fraud and bad faith in his complaint and, in response to defendants' motion to dismiss, presented evidence of fraud and bad faith through his own affidavit and supporting documents. For example, although defendants argue that they merely presented to DFS, the grand jury and the trial jury a different (even possibly incorrect) interpretation of the contracts at issue, plaintiff asserts that defendants did not merely make a mistake regarding the contracts but engaged in bad faith by presenting a purposeful misinterpretation of them. Plaintiff averred that a named MVP employee previously told him that individuals who resided outside Otsego County were eligible to participate in the Chamber's plan so long as they were members, yet defendants later asserted that plaintiff engaged in criminal conduct by enrolling such individuals. For example, Armstrong testified that plaintiff "knew" that enrolling individuals from outside Otsego County in the Chamber's plan was not just a violation of a contract, but "was illegal." Supreme Court properly declined to dismiss the complaint on the ground of statutory immunity because plaintiff presented sufficient allegations of fraud and bad faith.
We reach the same conclusion regarding defendants' assertion of common-law immunity. Courts can grant common-law immunity for reporting fraud if doing so serves the "best interests of the public" through "the exposure of those guilty of offenses against the public" even if "the one who sets the agencies in motion is actuated by an evil motive"; however, this involves a balancing test that weighs the conflicting interests of the public and the person who [*2]reported that activity (Brandt v Winchell, 3 NY2d 628, 635 [1958]; see Posner v Lewis, 18 NY3d 566, 570 [2012]). Plaintiff has adequately alleged that defendants, to cover their own mistakes, knowingly submitted false reports asserting that plaintiff committed insurance fraud. As there would be no public benefit from false reports of fraud, defendants will not be entitled to immunity if the facts as plaintiff alleged are borne out (see Posner v Lewis, 18 NY3d at 570). Therefore, Supreme Court properly declined to find that defendants were entitled to immunity at this juncture.
Supreme Court did not err in denying defendants' motion to dismiss the malicious prosecution claim against them. On a motion to dismiss for failure to state a cause of action, courts read the complaint liberally, accept as true the facts alleged, accord the plaintiff "the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87 [1994]). As relevant here, malicious prosecution requires "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice" (Broughton v State of New York, 37 NY2d 451, 457 [1975], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975]; see Place v Ciccotelli, 121 AD3d 1378, 1379 [2014]). Defendants challenge only the elements of initiation of the proceeding and absence of probable cause.
Generally, "[a] civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution" (Mesiti v Wegman, 307 AD2d 339, 340 [2003] [internal quotation marks and citation omitted]; see Barrett v Watkins, 82 AD3d 1569, 1572 [2011]; Lupski v County of Nassau, 32 AD3d 997, 998 [2006]). For a civilian to be considered to have initiated a criminal proceeding, "[a] plaintiff must demonstrate that the [civilian] played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act" (Mesiti v Wegman, 307 AD2d at 340 [internal quotation marks and citation omitted]; see Place v Ciccotelli, 121 AD3d at 1379). "Merely giving false information to the authorities does not constitute an initiation of the proceeding without an additional allegation or showing that, at the time the information was provided, the defendant knew it to be false, yet still gave it to the police or District Attorney" (Lupski v County of Nassau, 32 AD3d at 998). Plaintiff alleged that defendants provided the authorities with information that defendants knew to be false and explained how they knew it to be false. While trial and grand jury testimony alone generally may not constitute commencement or continuation of a criminal proceeding, that testimony may be used as relevant evidence of a person's state of mind regarding the falsity of evidence that he or she initially provided to the authorities (see De Lourdes Torres v Jones, 26 NY3d 742, 770-771 [2016]). In addition to submitting Pescetti's testimony, plaintiff submitted Pescetti's supporting depositions as evidence that Pescetti gave false information to DFS investigators.
Although an indictment is prima facie evidence of probable cause, a plaintiff can show a lack of probable cause for the criminal proceeding through "proof that [the] defendant has not made a full and complete statement of the facts either to the [g]rand [j]ury or the District Attorney, has misrepresented or falsified the evidence or else kept back evidence which would affect the result," which "requires pleading intentional or knowing conduct on the part of a defendant" (Lupski v County of Nassau, 32 AD3d at 999 [internal quotation marks and citation omitted]; see Colon v City of New York, 60 NY2d 78, 82 [1983]). Plaintiff pleaded such allegations. None of the affidavits or documentary evidence submitted by defendants definitively disposes of the claims (see Turtle Is. Trust v County of Clinton, 125 AD3d 1245, 1248 [2015], lv denied 26 NY3d 912 [2015]; Greenwood Packing Corp. v Associated Tel. Design, 140 AD2d 303, 305 [1988]). Because the determination of probable cause here depends on an evaluation of the facts or inferences to be drawn from such facts (see Parkin v Cornell Univ., 78 NY2d 523, 529 [1991]), Supreme Court properly declined to dismiss the malicious prosecution cause of action against defendants.
Supreme Court did not err in denying the motion to dismiss the claim against MVP for breach of the covenant of good faith and fair dealing. "Implicit in every contract is a covenant of good faith and fair dealing which encompasses any promise that a reasonable promisee would understand to be included. Even if a party is not in breach of its express contractual obligations, it may be in breach of the implied duty of good faith and fair dealing when it exercises a contractual right as part of a scheme to realize gains that the contract implicitly denies or to deprive the other party of the fruit or benefit of its bargain" (Elmhurst Dairy, Inc. v Bartlett Dairy, Inc., 97 AD3d 781, 784 [2012] [internal quotation marks, ellipsis, brackets and citations omitted]; see Rooney v Slomowitz, 11 AD3d 864, 867 [2004]; Just-Irv Sales v Air-Tite Bus. Ctr., 237 AD2d 793, 795 [1997]). However, for this cause of action to stand, a plaintiff must allege an applicable contractual term because "the implied obligation is only in aid and furtherance of other terms of the agreement of the parties" (Fahs Constr. Group, Inc. v State of New York, 123 AD3d 1311, 1312-1313 [2014] [internal quotation marks and citations omitted], lv denied 25 NY3d 902 [2015]; see Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1257 [2016]).
Plaintiff proffered that MVP's actions implicated the provisions of his broker agreement addressing commissions and the broker's obligation to ensure that applications are truthful. In the investigation, MVP asserted that plaintiff stole commissions by enrolling individuals in the Chamber's group health insurance plan despite knowing that they were ineligible. According to plaintiff, those individuals were eligible because there was no requirement limiting eligibility to residents of Otsego County, and MVP argued otherwise in order to protect itself from a DFS investigation and from poor financial outcomes related to the community rating it applied to the Chamber's plan. Therefore, plaintiff contends that the applications he submitted were accurate and truthful and he was entitled to commissions on them, contrary to MVP's assertions. Although defendants argue that the broker agreement was terminated before any of the conduct plaintiff complains about, MVP initiated the investigation before the termination and, plaintiff alleges, terminated the agreement based on the investigation that MVP instigated with false information and in bad faith, and all of MVP's later conduct that plaintiff now relies upon was related to that investigation. Hence, plaintiff has adequately alleged that MVP breached the covenant of good faith and fair dealing (see Ahmed Elkoulily, M.D., P.C. v New York State Catholic Healthplan, Inc., 153 AD3d 768, 770-771 [2017]; Elmhurst Dairy, Inc. v Bartlett Dairy, Inc., 97 AD3d at 784).
Finally, Supreme Court did not err in declining to dismiss the prima facie tort cause of action against defendants. "To state a legally cognizable claim for prima facie tort, a plaintiff must allege (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful. In addition, there can be no recovery under this theory unless malevolence is the sole motive for defendant's otherwise lawful act or, in other words, unless defendant acts from disinterested malevolence" (Posner v Lewis, 18 NY3d 566, 570 n 1 [2012] [internal quotation marks, brackets and citations omitted]). "While prima facie tort may be pleaded in the alternative with a traditional tort, once a traditional tort is established the cause of action for prima facie tort disappears" (Curiano v Suozzi, 63 NY2d 113, 117 [1984]; see Board of Educ. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 397, 406 [1975]). Although plaintiff may not recover under this theory if he succeeds on the malicious prosecution cause of action, he adequately pleaded prima facie tort in the alternative and may go forward with both causes of action at this point in the litigation (see Board of Educ. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d at 406; see also Light v Light, 64 AD3d 633, 634 [2009])[FN2]. Accordingly, we affirm.
Garry, P.J., Egan Jr., Devine and Clark, JJ., concur.
ORDERED that the order is affirmed, with costs.
Footnotes

Footnote 1: Robinson later pleaded guilty to scheme to defraud in the first degree.

Footnote 2: Although, in dicta, the Court of Appeals has disapproved of pleading prima facie tort in the alternative to malicious prosecution, that discussion related to preventing a cycle of retaliatory lawsuits to recover damages for prima facie tort predicated on the malicious institution of a prior civil action, as opposed to alleging malicious prosecution based on commencement or continuation of a criminal proceeding (see Curiano v Suozzi, 63 NY2d at 118-119; see also Muro-Light v Farley, 95 AD3d 846, 847 [2012]; Lemberg v Blair Communications, 251 AD2d 205, 206 [1998]).