THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY LEE BURDICK, Appellant.

Fourth Department, February 28, 1979

## APPEARANCES OF COUNSEL

*Edward J. Nowak, Public Defender (William Hasenauer* of counsel), for appellant.

*Lawrence T. Kurlander, District Attorney (Adam Bernstein* of counsel), for respondent.

## OPINION OF THE COURT

DOERR, J.

Defendant appeals from a judgment of the Monroe County

Court convicting him of robbery in the second degree following a jury trial.

On November 29, 1974 at about 11:00 P.M. a robbery occurred at a service station in the Town of Greece, a Rochester suburb. The only direct testimony offered by the People of this event came from an employee of the station who was there alone at the time. He testified that a man wearing a green army jacket, tan pants, black gloves, a ski mask and carrying a silver revolver walked into the station office. After telling the attendant to lie on the floor the robber tied the attendant's hands and feet with white adhesive tape. The man removed some five or six hundred dollars from the cash register which he opened with considerable difficulty, after receiving instructions from the attendant on how to open the register. The money was put in a bank bag, one of several regularly kept underneath the table supporting the register. The robber then went into the bay area of the station, out of the view of the attendant, where a door to another office was removed and he ransacked that office.

The attendant testified that he had considerable time to observe the robber, including his walk, his upper teeth through an opening in the mask, and heard the robber talk to him several times. He observed the walk to be distinctive but not the walk of defendant, and that the speech of the robber to be without accent, whereas he said that defendant always spoke with a southern accent and always wore glasses, which the robber did not. He testified that the only person who worked at the station who had teeth similar to that of the robber (discolored and crooked) was defendant, although he later admitted that he did not know that defendant had had a full set of upper dentures since August, 1969 and that the defendant's lower front teeth were removed in October, 1974 and replaced by a partial plate on November 27, 1974. Testimony offered by a dental expert for the defendant was unchallenged and unrebutted. The attendant never identified the defendant as the robber.

The defendant had been employed at the service station for several months prior to the robbery. He often worked with the victim attendant, who testified that he observed the defendant open the cash register many times without any difficulty in the course of his work. The defendant worked at the station with the attendant until two hours before the robbery when the defendant's work shift ended.

The only other testimony offered by the People in an attempt to link defendant to the robbery was that of another coemployee of the station, one Palmer. The latter testified that on December 5, 1975, one week after the robbery, while he and defendant were working at the station, he asked defendant if he could use defendant's car to go home for supper. He first gave as a reason for wanting to do so the fact that his own car was on the rack but later admitted that he did so because he suspected that defendant was the robber and he wanted to search the car. No reason for his suspicion was given. Palmer testified that he found a green army jacket and a pair of black knit gloves in open view on the back seat of the car. Under the rug of the car he found a roll each of quarters, dimes and nickels, a set of keys, and a Marine Midland money bag. He testified that he recognized the keys from the station, having seen them there some two months earlier, although there was no testimony that keys were taken in the robbery. There was no testimony of any rolled coins taken in the robbery except that rolled coins were kept in a box in the back office of the station.

The witness, Palmer, then returned to the station with defendant's car where defendant was still working and left a short time later. He went to the police station in the Town of Greece where he reported what he had found. The defendant was then intercepted by the police as he left the station in his car shortly after 9:00 P.M., his customary quitting time.

When the police searched defendant's car, with his consent, they found a green army jacket and black knit gloves in open view on the back seat of the car and a set of keys under the floor mat. No coins or wrappers or bank bag were found.

■■ The proof in the case admittedly was all circumstantial. The rule is well settled "that where circumstantial evidence is relied upon, the facts upon which inferences must be drawn must themselves * * * be of such a character as, if true, to exclude to a moral certainty every other hypothesis but that of the guilt of the accused, and that the ultimate fact may not be based on inference upon inference." (*People v Lewis,* 275 NY 33, 39.) Circumstantial evidence "is of no value if consistent with either the hypothesis of innocence or the hypothesis of guilt. It is not enough if the hypothesis of guilt will account for all the facts proven." (*People v Suffern,* 267 NY 115, 127; *People v Montanez,* 41 NY2d 53.) "But circumstantial evidence is as nothing unless the inferences to be

drawn from the circumstances are logically compelling. The danger, therefore, with the use of circumstantial evidence is that of logical gaps—that is, subjective inferential links based on probabilities of low grade or insufficient degree—which, if undetected, elevate coincidence and, therefore, suspicion into permissible inference." *(People v Cleague,* 22 NY2d 363, 367.) From an examination of the record in this case, it cannot fairly be said that the facts from which the inference of the appellant's guilt was apparently drawn are inconsistent with his innocence and exclude to a moral certainty every other reasonable hypothesis except guilt. *(People v Bearden,* 290 NY 478; *People v Cleague, supra.)*

For these reasons the judgment of conviction should be reversed and the indictment dismissed.

CARDAMONE, J. P., SIMONS, HANCOCK, JR., and CALLAHAN, JJ., concur.

Judgment unanimously reversed, on the law and facts, and indictment dismissed.