OPINION OF THE COURT
Irving Lang, J.
Must a witness be qualified as an expert in order to give his opinion regarding a person’s accent?
FACTS
Defendant Wilberto Sanchez, indicted for murder in the second degree, was accused of killing Julio Villa on March 17, 1984. At trial, the eyewitness, Mr. Israel Torres, testified that on March 17, 1984, at approximately 5:00 a.m., he was walking his girlfriend home in the vicinity of 167th Street and Sherman Avenue. He stated that he observed the defendant, a Puerto Rican male, arguing with Julio Villa in Spanish, just before the defendant shot and killed Villa. The prosecutor then asked Mr. Torres whether the man with the gun was speaking with a Dominican accent or with a Puerto Rican accent. (The defendant had previously given a statement to the police blaming the shooting on a "Dominican” who bore a remarkable resemblance to himself.) The defense attorney objected to the prosecutor’s question, on ground that since the witness was not qualified as an expert in linguistics, he should *92 be precluded from proffering an opinion regarding the accent of the gunwielder. Upon further questioning, Mr. Torres stated that he was Puerto Rican, that he has spoken Spanish all his life, to both Puerto Ricans and ^Dominicans, and that there is a distinctive Dominican accent and a different, equally distinctive, Puerto Rican accent. The issue, therefore, is whether, and to what extent, a lay witness may give an opinion regarding the accent of another.
LAW
The lay opinion rule requires the ordinary lay witness to confine his testimony to the facts, and to exclude his conclusions or opinions. (Fisch, Lay Opinions in New York, 37 Cornell L Q 32 [1951]; Richardson, Evidence, ch XX, § 361, at 326 [10th ed 1973]; Fisch, New York Evidence, ch 13, § 361, at 235 [2d ed 1977].) The rule is founded on the premise that, since it is the sole province of the jury to draw inferences from facts, admission of opinion testimony would usurp the jury’s fact-finding function. (Richardson, op. cit., at p 326.)
The exception to the rule excluding opinion evidence is couched in terms of necessity. Specifically, an ordinary witness may give his opinion on a question at issue whenever the facts are such that they cannot be described so as to enable persons to form proper conclusions regarding them. (Richardson, op. cit., § 363, at 328.) Before the court will admit lay opinions, the proper foundation must be laid. It must be demonstrated that:
(1) the facts which constitute the opinion are incapable of description;
(2) the subject matter does not require expert knowledge; and
(3) the witness is qualified to give his opinion. (Fisch, Lay Opinions in New York, op. cit., at 45.)
Within these parameters, opinions of ordinary witnesses have been admitted regarding matters of taste, smell, touch, color, weight, size, quantity, velocity, heat, cold, sickness, health, excitement, intoxication and disposition. (Richardson, op cit. § 366, at 339.) Inferences of identity as to race, language, visibility and sounds have likewise been received. {Id., at p 329.)
ACCENT
This court is unaware of any decision which addresses the *93 question of the admissibility of lay opinion testimony regarding the accent of a third party. However, examination of the subjects concerning which opinion evidence has been received reveals a simple proposition. That is, the opinion of a lay witness is admissible when, by virtue of his life experience, the witness is familiar with the subject matter in question, and the opinion does not require technical or scientific expertise.
Accent is a branch of phonetics, which in turn, is a division of linguistics. While some writers use accent and dialect interchangeably, accent relates to how words are pronounced whereas dialect involves not only accent but particular speech patterns of a group or region. It is clear that lay witnesses can often detect the distinctive accent related to particular ethnic or geographic groups. Thus, a lay witness depending upon his experience, could distinguish between a Yiddish accent and an Italian accent, or between a Russian and an English accent, or between a Spanish and French accent. In addition, within broad categories, certain more specific accents, characteristic of a particular region, may be ascertained. For example, the lay witness may be able to reliably identify the "Brooklyn” accent, as distinguished from the "Boston” accent, or the "Southern” accent from the "Cockney” accent. Human experience has taught us to discern the variations in the mode of speech of different individuals. "Individual speech patterns * * * are influenced by * * * major forces * * * The first and most notable influence on speech behavior is the region and locale in which the individual grows up * * * they * * * clearly reveal an individual’s geographic origin. Regional speech differences * * * are primarily matters of pronunciation.” (Thompson, Language, at 110-111 [Time-Life Books 1975].)
While linguistics is properly classified as a "science”, it does not mean that only an expert can testify as to accents with which he is familiar. Velocity is a branch of the science of physics, but lay people can testify as to the speed of a vehicle (Richardson, op cit.).
Although no case seems to address this issue specifically, many courts have accepted lay opinions sub silencio on matters relating to accent. (People v Burdick, 66 AD2d 459 [southern accent]; People v Brnja, 50 NY2d 366 [Slavic accent]; People v Brown, 95 AD2d 569 [accent part of probable cause]; *94 People v Pavao, 59 NY2d 282 [distinction between Brazilian accent and Portuguese accent].)
The basic principle was aptly articulated in 1875. "[C]ommon observers, having special opportunity for observation [may] testify to their opinions, as conclusions of fact”, although they are not experts, if "the subject matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time; and * * * the facts upon which the witness is called to express his opinion are such as men in general are capable of comprehending and understanding.” (Commonwealth v Sturtivant, 117 Mass 122, 137 [1875].) Of course, there may be occasions where an expert in linguistics might be required to testify that, for example, "greasy” is pronounced "greasy” south of Philadelphia. Clearly, this is not one of those instances.
CONCLUSION
Inasmuch as the witness has spoken Spanish all of his life to both Puerto Ricans and Dominicans, and since there is a distinct difference between the two accents, I find that a proper foundation has been laid for the admission of lay opinion testimony regarding the accent of the shooter. The objection of the defendant is overruled. The weight of such testimony is to be assessed by the jury.