OPINION OF THE COURT
Robert B. Wiggins, J.
Defendant, Chastity A. Simmons, has been charged under indictment No. 2016-180 with six counts each of promoting prison contraband in the first degree (Penal Law § 205.25 [1]), *577 falsifying business records in the first degree (§ 175.10) and official misconduct (§ 195.00). The charges stem from defendant’s alleged use of a personal cell phone while she was working as a correction officer at Groveland Correctional Facility. Defendant moves, inter alia, for dismissal of the indictment for insufficient evidence at grand jury. For the reasons that follow, the motion is partially granted.
І.
The People s primary witness was Brian Austin, a Senior Investigator with the New York State Department of Corrections and Community Supervision (DOCCS). DOCCS had begun an investigation of defendant’s activities at work after receiving an anonymous tip that she had been engaging in an inappropriate relationship with an inmate. No admissible evidence was introduced to support that allegation. However, during the course of that investigation, Investigator Austin talked to an inmate who alleged that he had seen the glow of a cell phone from inside defendant’s shirt, and heard it ring, in June of 2015. Defendant’s cell phone records were subpoenaed, and the call and text information was compared against defendant’s work time cards and logbooks. Investigator Austin testified that correction officers are required to sign their time cards and verify “the validity of the document.” If an officer was to leave her unit with an authorized release, they would have to log that information. Investigator Austin said he would “expect that if [defendant] was to be gone more than 15 minutes from the facility where she . . . left the secure fence area, then maybe I would find a time-off slip, maybe I would find her punched out in the time card.” He further testified that he “would also maybe expect to find in the facility staffing, as I mentioned earlier, where a sergeant had to make a notation as to what officer he had to take out of other coverage to put into her job during the time that she was gone.”
Investigator Austin testified that comparison of the cell phone records and time sheets showed that “there were on-duty usages of both texts and calls, phone calls, voice calls, during the time that [defendant] was scheduled to work.” Such off-duty cell phone use is “something [defendant] could do if she had the appropriate authorization and used her telephone outside the confines of the facility.” Correction officers may *578 have cell phones on facility grounds—such as in their vehicles— but are not allowed to bring their personal cell phones into Groveland, i.e., “inside the fence” while they are working “without the express written permission of the Commissioner of the Department of Corrections,” which defendant did not have. Investigator Austin testified that “there has never been an instance I’m aware of that the Commissioner has authorized, in writing, an employee to have a cell phone in the confines of the facility.” He further testified that cell phones are “absolutely” considered contraband in the facility. When asked to define contraband, Investigator Austin testified that it “is any item that is not specifically authorized by the Department for an inmate or employee to possess inside the confines of the facility” (emphasis supplied). Investigator Austin also “absolutely” affirmed that cell phones are considered dangerous contraband, because they detract from a correction officer’s vigilance, and because they could be confiscated by inmates and used to contravene prison monitoring of communications. All of defendant’s shifts were worked within the confines of the facility.
The first instance where defendant’s phone records indicated usage during work hours was on October 23, 2014, when there was an 18V2-minute voice call at 4:17 p.m. Defendant’s logbook indicated that she had been relieved by another officer from 4:10 p.m. to 4:20 p.m. on that date, which left
“fifteen minutes where her time was unexcused, so to speak. Knowing where she worked in the facility, where her car would be, I find it very unlikely that she would have had sufficient time to make an eighteen-minute phone call, leave the confines of the facility to a location where her phone was allowed and then return within the ten-minute time indicated in her logbook.”
Records showed another on-duty call at 4:30 p.m. on November 6, 2014, and text messages were “either sent, read [or] received” on four additional occasions between March and June of 2015. On none of those occasions, other than the October 23, 2014 call, did records show “time-off slips,” or any indication that defendant had been relieved in order to use her phone outside the facility. Investigator Austin acknowledged that the phone records did not indicate location information as to exactly where the phone was used. Another investigator testified that records indicated that the calls were made “in that area” around the facility, but there was no evidence presented that *579 defendant was seen with a cell phone, or any calls or texts were made, within the confines of the facility on any of the dates at issue.
HH HH
In deciding whether the evidence introduced before the grand jury is sufficient to support the charges, the court must determine whether the People have made out a prima facie case that defendant committed the crimes charged (see People v Jennings, 69 NY2d 103, 114-115 [1986]; see also People v Jensen, 86 NY2d 248 [1995]). “In the context of the Grand Jury procedure, legally sufficient means prima facie, not proof beyond a reasonable doubt” (People v Mayo, 36 NY2d 1002, 1004 [1975]; see Jensen, 86 NY2d at 252; People v Gasen, 283 AD2d 227, 228 [1st Dept 2001], lv denied 96 NY2d 918 [2001]). In assessing whether the People have presented a prima facie case, the court “inquires] whether the evidence viewed in the light most favorable to the People, if unexplained and uncontra-dicted, would warrant conviction by a petit jury” (Jennings, 69 NY2d at 114; see People v Woodruff, 4 AD3d 770, 772 [4th Dept 2004]; see also People v Smaragdas, 27 AD3d 769 [2d Dept 2006], lv denied 7 NY3d 763 [2006]).
“[T]his standard limits the reviewing court’s inquiry to determining whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes. That other, innocent inferences could possibly be drawn from the facts is irrevelant on this pleading stage inquiry, as long as the Grand Jury could rationally have drawn the guilty inference” (People v Deegan, 69 NY2d 976, 979 [1987]; see Jensen, 86 NY2d at 252; Woodruff, 4 AD3d at 772; Smaragdas, 27 AD3d at 769).
The court reviewing the grand jury presentation must limit its inquiry to the legal sufficiency of the evidence and may not weigh the proof or examine its quality or adequacy (see People v Galatro, 84 NY2d 160, 164 [1994]). “The People have broad discretion in presenting a case to the grand jury and need not ‘present all of their evidence tending to exculpate the accused’ ” (People v Radesi, 11 AD3d 1007, 1007 [4th Dept 2004], lv denied 3 NY3d 760 [2004], quoting People v Mitchell, 82 NY2d 509 [1993]; People v Edwards, 32 AD3d 281, 282 [1st Dept 2006], lv denied 7 NY3d 901 [2006]).
*580 HH J—i HH
The first six counts of the indictment charge defendant with promoting prison contraband based on her allegedly having used her cell phone within the confines of Groveland prison on six separate occasions. Penal Law § 205.25 provides that
“[a] person is guilty of promoting prison contraband in the first degree when:
“1. He knowingly and unlawfully introduces any dangerous contraband into a detention facility; or
“2. Being a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any dangerous contraband.”
Turning to the evidence presented to the grand jury, as an initial matter, the court does not believe that there is legally sufficient evidence that defendant possessed and used the cell phone within the confines of the facility on the six occasions charged in the indictment. The mere fact that cell phone records indicated that defendant’s cell phone connected to a cell tower near the facility on each of the six occasions in question does not mean that defendant used the phone within the confines of the prison, as opposed to using it outside, say in her car, which Investigator Austin testified was permissible. While an inmate did testify that he saw what appeared to be a cell phone in defendant’s breast pocket on one occasion, this was not one of the occasions charged in the indictment. The mere fact that defendant may have possessed the cell phone within the facility on one unrelated occasion does not demonstrate that she possessed the phone within the facility on the occasions charged in the indictment.
Even assuming, arguendo, that the fact that the cell phone was detected in the vicinity of the prison, together with the inmate’s testimony and defendant’s time and log records indicating that she was on duty at the times alleged in the indictment, would allow an inference that she brought the phone into the prison, concluding that she did anything but possess it herself would require a further inference, not grounded on any evidentiary basis whatsoever, and this would be an “impermissible inference upon an inference” (People v Montalvo, 183 AD2d 528, 530 [1st Dept 1992]; see People v Burdick, 66 AD2d 459, 461 [4th Dept 1979] [finding of guilt “ ‘may not be based on inference upon inference’ ”]). Indeed, the only evidence that defendant ever possessed her cell phone *581 within the prison—and then, again, not on a date alleged in the indictment—was the inmate’s testimony that defendant herself possessed it on her person. And while such possession of a cell phone by a correction officer may well violate prison rules and be a basis for defendant’s termination from employment, the court concludes, for the reasons set forth below, that such mere possession does not constitute “introduce [ing] [the cell phone] into” the facility within the meaning of Penal Law § 205.25 (1).
Initially, the statute explicitly makes a distinction between persons “confined in a detention facility,” who are guilty of promoting prison contraband by merely “possessing]” dangerous contraband, and other persons, i.e., employees, visitors, etc., who are guilty of promoting prison contraband only if they “introduce[ ] . . . dangerous contraband into” a facility (Penal Law § 205.25 [1], [2] [emphasis supplied]). What exactly “introduce [ ] . . . into” means is not clear from the face of the statute, but fundamental rules of statutory construction dictate that it must mean something more than simply possessing contraband within the facility. It is axiomatic that “where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, and the same meaning will be attached to similar expressions in the same or a related statute” (McKinney’s Cons Laws of NY, Book 1, Statutes § 236). A necessary corollary of this rule is that “[w]hen, on the other hand, the Legislature uses unlike terms in different parts of a statute it is reasonable to infer that a dissimilar meaning is intended” (McKinney’s Cons Laws of NY, Book 1, Statutes § 236, Comment at 403 [1971 ed]; see Matter of Level 3 Communications, LLC v Clinton County, 144 AD3d 115, 119 [3d Dept 2016] [“Where ‘the Legislature uses different terms in various parts of a statute, courts may reasonably infer that different concepts are intended’ ”], quoting Rangolan v County of Nassau, 96 NY2d 42, 47 [2001]). Thus, the fact that the legislature made “possession” of dangerous contraband by prisoners illegal, but required that others would be guilty of the crime only if they “introduce [d] . . . dangerous contraband into” the facility means that mere possession of dangerous contraband by correction officers is not a violation of the statute.
Notably, this is a distinction that Investigator Austin ignored when he told the grand jury that contraband consisted of “any item that is not specifically authorized by the Department for *582 an inmate or employee to possess inside the confines of the facility” (emphasis supplied). With all due respect to the Investigator, while this may be true as a matter of prison employment policy, it is not an accurate recitation of the Penal Law. “Contraband” is specifically defined by Penal Law § 205.00 (3) as “any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order” (emphasis supplied). Thus, whether an object constitutes contraband is dependent on whether an inmate is prohibited from possessing it, not whether its possession by an employee is forbidden.
This comports with the fundamental evil that the crimes of promoting prison contraband (Penal Law §§ 205.20, 205.25) were designed to prevent, i.e., the use of such contraband by inmates. Thus, in the case of non-prisoners charged under subdivision (1) of each statute, “introduce [ ] . . . into” must be read as requiring that there be some showing that the non-prisoner brought the contraband into the facility for the benefit of an inmate—or at least attempted or intended to do so. This interpretation comports with decades of case law. So far as the court can tell, there is not a single case where a non-inmate defendant was convicted of promoting prison contraband—or the crimes that preceded them (see Penal Law former §§ 1691, 1791)—without such a showing (cf. People v Bartholomew, 105 AD3d 613, 614 [1st Dept 2013] [correction officer “smuggle(d) a knife into the Manhattan Detention Complex (MDC) for the purpose of giving the contraband to . . .an inmate”]; People v McDermott, 69 NY2d 889 [1987] [correction officer sold alcohol to an inmate]).
The language of the predecessor statute also supports this interpretation. Penal Law former § 1691 made it a crime to “convey into a prison” various articles of contraband. Black’s Law Dictionary (334 [7th ed 1999]) defines “convey” as “[t]o transfer or deliver (something . . . ) to another” (id. at 334 [emphasis supplied]). Thus, merely possessing, or bringing something into a prison for one’s own use, would not constitute a conveyance—there would have to be at least an intent to transfer the property to another, i.e., an inmate. While the recodification of the Penal Law in 1965 resulted in the present statute being reworded, the Court of Appeals has indicated that no real substantive difference was intended (see People v Finley, 10 NY3d 647, 655-656 [2008]).
Accordingly, counts 1 through 6 of the indictment are dismissed because they are not supported by legally sufficient *583 evidence. These dismissals are with leave to resubmit pursuant to CPL 190.75 (3).
3
Counts 7 through 12 of the indictment charge defendant with falsifying business records in the first degree (Penal Law § 175.10) for
“intentionally omit [ting] in her time card filed with the New York State Department of Corrections, stating that she was working continuously with no breaks during her shift . . . when in fact she was operating her cell phone during her shift inside Groveland Correctional Facility . . . committing the crime of Promoting Prison Contraband in the First Degree.”
Penal Law § 175.10 makes it a felony for a person to commit the crime of falsifying business records in the second degree “when [her] intent to defraud includes an intent to commit another crime.” The court is highly dubious that merely using a personal cell phone while on duty (particularly simply sending or receiving a text message, as four of the counts charge), and not disclosing this on a time card, could support a charge of falsifying business records in the second degree. Indeed, if such were the case, the court would hazard to guess that most, if not all, public servants charged with keeping time cards would be guilty of this crime. In any event, however, even assuming, arguendo, that such conduct could support a charge of second degree falsifying business records, these counts must nevertheless be dismissed because the court has already concluded that there is insufficient evidence to support the counts of the indictment charging promoting prison contraband in the first degree. In its presentation the People did not specify what crime was intended to raise the charge to first degree. Absent specificity, the charges may have been able to stand under the theory that the intended crime was official misconduct. However, in the indictment, the People chose to delineate the fraudulent intent of each count from 7 through 12 as being the intent to commit promoting prison contraband in the first degree. Because the indictment specifies the fraudulent intent as being to commit counts 1 through 6, and the court has ruled that there is insufficient evidence to support counts 1 through 6 and are dismissed, counts 7 through 12 must likewise be dismissed. The court has no authority to amend the theory of the indictment on such a matter. In short, because there is insufficient *584 proof of any intent to commit promoting prison contraband, which as specified in the indictment is necessary to support the charges of falsifying business records in the first degree, counts 7 through 12 of the indictment must also be dismissed for lack of legally sufficient evidence. Again dismissal is with leave to resubmit pursuant to CPL 190.75 (3).
V.
Counts 13 through 18 charge defendant with the class A misdemeanor of official misconduct (Penal Law § 195.00 [1]). That statute states that
“[a] public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:
“1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized” (id.).
The indictment charges that
“in her official capacity, the Defendant, filed a time card with the New York Department of Corrections, indicating a continuous shift with no authorized breaks, while using a cell phone inside the facility which was unauthorized and in violation of the rules and regulations of the New York Department of Corrections.”
Defendant argues primarily that there is no proof that she intended to “obtain a benefit,” because “[t]he benefit at issue under this theory would be the personal satisfaction of using a cell phone,” which would be too insubstantial to constitute a benefit under the Penal Law (affirmation of defendant’s attorney ¶ 44). To the extent that these charges are premised solely upon defendant’s unauthorized use of a cell phone, the court would be inclined to agree. A “benefit” is defined as “any gain or advantage to the beneficiary” (Penal Law § 10.00 [17]). While this fairly broad definition is not limited to financial gain, and “can encompass political or other types of advantage” (People v Feerick, 93 NY2d 433, 447 [1999]), the benefit requirement was intended to “exclude [ ] unauthorized conduct or neglect of duty, which, though possibly a proper basis for removal or disciplinary action in some instances, does not seem a fair basis for the automatic imposition of criminal sanctions” (id. at 446). Simply using a personal cell phone while on duty would seem to the court to constitute such conduct that, while perhaps *585 unauthorized and a proper basis for termination, should not support a finding of criminality. Otherwise, again, there would likely be few public officials who would not be guilty of this crime.
However, these charges are not premised solely on the benefit to defendant of using a cell phone on duty; they are predicated upon defendant having “filed a time card with the New York Department of Corrections” that did not indicate that she had taken breaks to use her cell phone. The obvious benefit to defendant from such conduct is the paycheck she received as a result, which, say the People, would have been less had she properly recorded her time. There is a problem with this, however. It could be argued that using a personal cell phone while on duty and not reporting it on a time sheet (even assuming that it was required to be reported, proof of which here is minimal at best) is so de minimis an activity, with such an ill-defined benefit, that it can not support criminal liability (see generally People v Esposito, 160 AD2d 378 [1st Dept 1990]). The statute was “intended to encompass flagrant and intentional abuse of authority by those empowered to enforce the law” (Feerick, 93 NY2d at 445). The conduct alleged here might “more properly be considered in a disciplinary rather than a criminal forum” (People v Barnes, 117 AD3d 1203, 1206 [3d Dept 2014], quoting Feerick, 93 NY2d at 448 [police officer’s act of flashing badge at pharmacy to obtain faster service, while an act relating to his office done to obtain a benefit, nonetheless did not support conviction for official misconduct]). Nonetheless, at the grand jury stage, this court can not as a matter of law say that the evidence, when viewed in a light most favorable to the prosecution, does not adequately demonstrate the charges of official misconduct. Therefore, counts 13 through 18 shall stand.
The court having dismissed all of the felony counts of the indictment, the court hereby transfers the indictment charging the remaining six misdemeanor counts of official misconduct to the Town of Groveland Justice Court pursuant to NY Constitution, article VI, § 19 (b) (see Matter of Clute v McGill, 229 AD2d 70 [3d Dept 1997]).